## MICHAEL LEE HERNANDEZ v. STATE OF MARYLAND

[No. 451, September Term, 1968.]

*Decided July 2, 1969.*

356

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Steven M. Cooper* (*Marvin E. Preis* on the brief) for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph C. Sauerwein, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

On April 21, 1968 at approximately 4:10 p.m., Craig Keys, an employee of University Lane Drug Store in the Adelphi Shopping Center in Prince George's County, was robbed at gun point while at work by two white males who took $106.00 from the store cash register. Hugh and Virginia Tamassia observed two men at 4:15

p.m. hurriedly leave the vicinity of the store and enter a slowly moving automobile. Shortly thereafter, the police arrived on the scene and the Tamassias related their observations, describing in detail the automobile which the men had entered, including the Virginia license number of the vehicle. As a result of this information, the police immediately broadcast a description of the car. Officer Don Liller, in adjoining Montgomery County, heard the broadcast and, at 4:50 p.m., observed the described vehicle, stopped it, and arrested its three occupants, namely the appellant, William Sanders, and John Vucci. Money in the approximate amount of $116.00 was observed on the front seat and front floorboard of the car and was seized, together with a pair of sunglasses, a gun holster, and some shells.

The three men were thereafter jointly indicted for the robbery. Appellant was granted a severance. Prior to trial he moved to suppress the extrajudicial identification of him made by Mrs. Tamassia at a lineup held shortly after his arrest; and also to suppress the extrajudicial identification made by Keys on April 25 from a photograph taken of the earlier lineup, as well as the identification of him made by Keys at the preliminary hearing held on April 26.

At the hearing on the motion held outside the presence of the jury, evidence was adduced showing that, in the presence of appellant's counsel, an eight-man lineup was held at 8:30 p.m. on April 21, the day of the arrest, appellant, Sanders, and Vucci each being a participant in the lineup; that Keys was unable to make a positive identification of any of the robbers at the lineup; but that Mrs. Tamassia identified Sanders and appellant as the two men she had seen leaving the robbery scene. It was clear from Mrs. Tamassia's testimony, however, that her identification of appellant was not based on his facial features, but rather was predicated on the shirt he was wearing, coupled with his distinctive hair color and style. The evidence further showed that on April 25, Keys was

shown the photographs of the lineup, at which time he indicated that appellant and Sanders were similar in appearance to the men who robbed him, but that he nevertheless could not make a positive identification. There was testimony to the effect that while the police made no suggestion to Keys that any of the subjects depicted in the lineup photographs were in fact the robbers, Detective James Ross told Keys that in not making an identification he was not being fair either to himself or the State. Keys was uncertain whether Ross made this comment before or after he looked at the lineup photographs. On April 26 at the preliminary hearing, Keys again stated that appellant and Sanders were similar to the robbers, but that he could not make a positive identification.

At the conclusion of this evidence, the trial judge ruled that under the totality of the circumstances, it was proper for the State to produce the same identification evidence before the jury. The jury subsequently found appellant guilty of robbery and the court sentenced him to ten years under the jurisdiction of the Department of Correction.

## I

Appellant contends that the court erred in denying his motions to exclude the testimony at trial of Keys and Mrs. Tamassia on the ground that the pretrial confrontations were so impermissibly suggestive and unfair as to constitute a violation of due process of law under *Stovall v. Denno*, 388 U. S. 293, and *Simmons v. United States*, 390 U. S. 377. Specifically, appellant urges that the pretrial identifications by Keys were the unlawful product of police compulsion, based on their assertion to Keys that it would be unfair unless he made such an identification. As to the extrajudicial identification by Mrs. Tamassia, appellant asserts, in effect, that the pretrial identification procedure was constitutionally tainted because he was the only person in the lineup wearing a blue plaid shirt, this item of clothing constituting the basis upon which the identification was made.

As pointed out in *Presley v. State,* 224 Md. 550, 556, "the general rule as to the admission of an extrajudicial identification in a trial where the identity of the accused is an issue, is that such identification is admissible when it appears that the circumstances surrounding the same were such as to preclude any reasonable suspicion of unfairness or unreliability." It has been similarly held that any confrontation between a victim of, or an eyewitness to a crime, and the accused for identification purposes, including a photographic identification, may be conducted under conditions so unnecessarily suggestive and conducive to irreparable mistaken identification as to contitute a denial of due process of law. *Thompson v. State,* 6 Md. App. 50; *Baldwin v. State,* 5 Md. App. 22; *Gibson v. State,* 5 Md. App. 320. But whether an accused's right of due process of law was violated in the conduct of such a confrontation depends on the totality of the circumstances surrounding it, *Stovall v. Denno, supra,* but a photographic identification will be set aside only if the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, *Simmons v. United States, supra.*

It appears clear from the evidence adduced at the suppression hearing that Mrs. Tamassia told the police prior to viewing the lineup that one of the men she had seen leaving the robbery scene had black hair combed straight back and wore a blue plaid shirt. But the fact that appellant appeared in the lineup wearing a blue plaid shirt does not of itself render the lineup so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. Appellant's arrest and the ensuing lineup occurred only a few hours after the crime was committed, and it is apparent that appellant was placed in the lineup wearing the clothing in which he was arrested. The police are not required to stage a masquerade by dressing all of the men in the lineup in similar attire, *Presley v. State, supra,* at page 556, and there is nothing in the record before us indicating that prior to the lineup the police had knowledge of the peculiar significance of the blue plaid shirt

in Mrs. Tamassia's prospective identification. Indeed, the lineup photographs which were introduced in evidence, and which we have reviewed, show that one of the other participants in the lineup was wearing a plaid or checkered shirt, and while Mrs. Tamassia testified that appellant was the only person therein wearing a *blue* plaid shirt, we do not think that such a circumstance, standing alone, fatally taints what otherwise appears to have been a model lineup—one conducted shortly after the commission of the crime, attended by counsel representing the accused, involving eight men of the same color and general age group, and of approximately the same height. Compare *Baker v. State*, 3 Md. App. 251, a case in which the conviction was upheld where the evidence showed that the defendant was placed in a lineup dressed in the same clothing alleged to have been worn at the time of the offense; *Presley v. State, supra,* where the Court of Appeals rejected a claim that a lineup was unfair because the defendant was the only person in it wearing a brown leather jacket and red hunting cap, this being the same or similar clothing as had been described by the victim to the police as having been worn by her assailant; and *Foster v. California*, 394 U. S. 440, where the Supreme Court, in the course of its holding that the pretrial confrontations there involved were constitutionally defective, mentioned the fact that the defendant "stood out from the other two men by the contrast of his height and by the fact that he was wearing a leather jacket similar to that worn by the robber."

Nor does the mere fact that the jury was permitted to consider Mrs. Tamassia's identification of appellant, although based only on the blue plaid shirt, together with the color and style of appellant's hair,[1] constitute, of itself, a denial of due process of law. The evidence indicated that the accused passed directly by the identifying witness only a few hours prior to her lineup identifica-

---

1. At the trial before the jury, Mrs. Tamassia testified that her identification of appellant was also based on her observation of his height.

tion of him, and it clearly appeared from her testimony that she had a vivid recollection of his slick black hair in combination with his blue plaid shirt, enabling her, in sum, to make a positive identification. Of course, the weight and reliability of such an identification is a matter to be considered by the jury in light of all the circumstances. *Foster v. California, supra* (footnote 2).

We, therefore, conclude that the conduct of the lineup was not so unnecessarily suggestive and conducive to irreparable misidentification as to constitute, in view of the totality of the circumstances, a denial of due process of law; and that the admission of such identification evidence at the trial did not, in itself, constitute a denial of due process of law.

At no time, either before or during trial, did Keys make a positive identification of either appellant or Sanders. His statement that appellant and Sanders were similar in appearance to the men who robbed him was qualified by his testimony at the suppression hearing, and before the jury, that he could not make a positive identification of either of the robbers. While we think it improper for a police officer to tell a prospective identifying witness that his failure to make an identification is unfair, and thereafter implore him to make such an identification, the record does not indicate when that statement was made, whether before or after the photographs were shown to the witness. The fact that Keys made no positive identification indicates that he was not influenced by the statement of Detective Ross and, on the record before us, we are unwilling to hold that Keys's equivocal identification from the lineup photographs was based on factors "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification "within the rationale of *Simmons v. United States, supra*. There was, in fact, no identification and in his testimony before the jury, Keys made it plain that at most appellant was similar in appearance to one of the robbers. The weight of such evidence, we hold, was prop-

erly for the jury, it being clear, however, that such an identification without more could not, as a matter of law, support a conviction.

Appellant's second contention — that the trial court committed prejudicial error when it permitted the State to impeach its own witness—is cast against this evidentiary background: At the trial before the jury, the State called David Vucci as a witness on its behalf. Vucci—arrested with appellant and also indicted for the robbery—testified under a grant of immunity that at approximately the time the robbery was committed, he was in a car with appellant and Sanders "in the vicinity" of, or "over near" the Adelphi Shopping Center in which the University Lane Drug Store was located—"about half a mile, three quarters of a mile" away. Vucci testified that he could not definitely say that he was at the shopping center because he was asleep in the car. At this point, the Assistant State's Attorney approached the Bench and, out of the presence of a jury, the following colloquy occurred:

> "MR. SAUERWEIN [Assistant State's Attorney] : I ask permission of the Court to impeach this witness for the purpose of showing that his statement that he gave to Detective Ross is contrary to the statement the way he is testifying today, that he told Detective Ross that he was at the Adelphi Shopping Center, and I expected him to say he was at the Adelphi Shopping Center, and at this moment he is denying ever being there.
> THE COURT: Well, you claim surprise?
> MR. SAUERWEIN: Yes.
> THE COURT: And you want the right to lead the witness?
> MR. SAUERWEIN: Yes, sir.
> MR. McDANALD [defense counsel] : He is entitled to do that.
> THE COURT: I would say so."

Upon further questioning by the State, Vucci testified that he had given a statement to Detective Ross the night of his arrest, but that he had only admitted that he and the others had been in the vicinity of the shopping center rather than actually at the shopping center.

Appellant urges that the trial judge erroneously permitted the State to impeach Vucci because it failed to prove surprise or to lay a proper foundation as to the time and place of any inconsistent statements made by Vucci.

While a party ordinarily may not impeach his own witness by proof of prior statements which are inconsistent with, or contradictory to, his testimony at trial, where such party satisfies the court that he has been taken by surprise and that the testimony is contrary to what he had a right to expect, it is within the sound discretion of the trial court to determine whether or not proof of prior inconsistent statements should be permitted.[2] *Green v. State,* 243 Md. 154; *Sellman v. State,* 232 Md. 344; *Baldwin v. State, supra.* Where such proof is allowed, its admission is not for the purpose of discrediting the witness, but to contradict him and thereby afford the party calling him an opportunity to show why he called the witness. *Sanders v. State,* 1 Md. App. 630.

As heretofore indicated, the Assistant State's Attorney, out of the jury's presence, explained to the court the specific nature of the statement alleged previously to have been made by Vucci to Detective Ross, what Vucci's expected testimony had been, that the witness's denial came as a surprise, and that he, therefore, wanted to impeach him by showing a prior inconsistent statement. Thus informed, the court granted the State the right to do so by asking Vucci leading questions, a procedure with which appellant's counsel expressed agreement. The Assistant State's Attorney was unable, after questioning Vucci, to

---

2. In these circumstances the right to prove prior inconsistent or contradictory statements is limited to statements made to the party calling the witness, or his attorney, or to some other person to be communicated to him. *Parker v. State,* 227 Md. 468.

gain an admission from him that he had previously told Detective Ross that he was at the shopping center. In effect, therefore, the only evidence on the point before the jury was that the men were not actually at that location. While the State might have been more specific in identifying the details of Vucci's prior statement made to Ross, we think the record sufficiently shows that the State was genuinely surprised by Vucci's trial testimony; and we do not believe that the court abused its discretion in allowing the State to undertake to contradict Vucci's denial that he, appellant, and Sanders had actually been at the shopping center at the time of the robbery. See *Plumley v. State,* 4 Md. App. 671.

Nor do we find merit in appellant's further contention that the court erred in failing to instruct the jury that Vucci's alleged prior statements concerning his presence at the shopping center could not be considered as evidence having probative value on the issue of his guilt or innocence. Since Vucci did not admit making any such prior statement, the appellant never specifically requested an instruction on the point. Consequently, we find no merit in the contention.

### III

Finally, we see no merit in appellant's contention that the court erred in failing to grant his motion for judgment of acquittal at the conclusion of all the evidence. To overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary to show that there was no legally sufficient evidence, or inferences drawable therefrom, from which the jury could find the accused guilty beyond a reasonable doubt. *Royal v. State,* 236 Md. 443; *Culver v. State,* 1 Md. App. 406. In every criminal case — whether tried before a jury or by the court sitting without a jury—evidence, to meet the test of legal sufficiency, must show directly, or support a rational inference of, the facts required to be proved; and the facts must be established, or the inference supported, beyond a reasonable doubt or to a moral certainty, or a

reasonable doubt of an opposite fact must be created. *Vincent v. State,* 220 Md. 232; *Spencer v. State,* 1 Md. App. 264. While it is neither our function nor our prerogative to weigh the evidence presented to the jury, we are required to determine its legal sufficiency to take a particular issue, or the entire case, to the jury when, as here, the point is properly preserved by motion for judgment of acquittal. *Quinn v. State,* 1 Md. App. 373. In the final analysis, therefore, to set aside the jury verdict we must be able to say that there was no legally sufficient evidence from which the jury could find appellant guilty beyond a reasonable doubt. *Pressley v. State,* 244 Md. 664. See *Cobb v. State,* 2 Md. App. 230.

There was evidence before the jury from which it could properly find that appellant and Sanders were observed by Mrs. Tamassia as they hurriedly left the immediate scene of the robbery. By the testimony of Vucci, appellant and Sanders were together in a car at the approximate time of the robbery and were in the vicinity of the crime scene. There was testimony that appellant, Sanders and Vucci were arrested within an hour after the crime in an automobile with a sum of money scattered about the car approximating that taken in the robbery, this being the same vehicle which Mrs. Tamassia observed the appellant and Sanders enter when leaving the scene of the robbery. And while Keys could not make a positive identification of the robbers, he did indicate that appellant was similar in appearance to one of the robbers. Moreover, Keys testified that one of the men who robbed him had brown hair combed straight back, that one was wearing a blue jacket, and the other sunglasses. The evidence showed that a pair of sunglasses was seized from the car at the time of the arrest.

The presence of an accused at or near the scene of a crime, and flight therefrom, are important elements to be considered in determining guilt, *Coleman v. State,* 4 Md. App. 386, and it is a well settled principle that, absent a satisfactory explanation, exclusive possession of recently

stolen goods, including, as here, money from a robbery, may, in circumstances like those here present, permit the drawing of an inference of fact that the possessor was the robber, *Anglin v. State*, 244 Md. 652, *Lawrence and Boyd v. State*, 6 Md. App. 226. It is, of course, well settled that such possession is not necessarily confined to one individual, but that there can be joint exclusive possession in more than one individual, *Wilkins v. State*, 4 Md. App. 334, including such possession among several occupants in a motor vehicle, *Bury v. State*, 2 Md. App. 674.

Considering the evidence before the jury in its totality, we cannot conclude that it was legally insufficient for the jury to have found appellant guilty of the robbery beyond a reasonable doubt.

*Judgment affirmed.*