# MICHAEL D. COOK *v.* STATE OF MARYLAND

[No. 147, September Term, 1969.]

*Decided December 5, 1969.*

244

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Fred Warren Bennett* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, Jr., State's Attorney for Anne Arundel County,* and *T. Joseph Touhey, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

### THE ADMISSION OF IDENTIFICATION EVIDENCE

tablished that evidence to show the identity of an ac-
The general rule in this jurisdiction has been long es-

cused as the criminal agent in the perpetration of the crime charged was admissible when adduced from:

1) an eyewitness to the crime, by such witness
   a) making a judicial identification; or
   b) testifying as to an extrajudicial identification made by the witness;
2) a third party testifying as to an extrajudicial identification by an eyewitness when made under circumstances precluding the suspicion of unfairness or unreliability, where the out of court declarant was present at trial and subject to cross-examination.

See *Judy v. State,* 218 Md. 168, 174; *Walters v. State,* 242 Md. 235, 239; *Johnson v. State,* 237 Md. 283, 289; cited in *Smith and Samuels v. State,* 6 Md. App. 59, 63-64. The substance of these rules of law are still effective in the light of the *Wade—Gilbert—Stovall* trilogy of opinions decided by the Supreme Court of the United States.[1] They were, however, qualified by the exclusionary rules enunciated in those opinions. The exclusionary rules were predicated upon the determination that a pre-trial confrontation, within the meaning of the opinions, was a critical stage of a criminal proceeding. We have found that a confrontation within the meaning of *Wade—Gilbert—Stovall* was a pre-trial confrontation which was not subject to fair and meaningful objective review later at the trial, including, but not limited to, lineups, both pre-indictment and post-indictment. *Palmer v. State,* 5 Md. App. 691; *Tyler v. State,* 5 Md. App. 265. Therefore, absent a waiver of the right, such confrontation without the presence of counsel for the accused was illegal. And, independent of any right to counsel claim, such confrontation may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law. But while the mere

---

1. *United States v. Wade,* 388 U. S. 218; *Gilbert v. State of California,* 388 U. S. 263; *Stovall v. Denno,* 388 U. S. 293, each decided 12 June 1967.

lack of counsel, absent an effective waiver, is sufficient of itself to render such a confrontation illegal, whether the conduct of the confrontation violates due process, even with counsel present or his presence properly waived, depends on the totality of the circumstances surrounding it. *Stovall v. Denno, supra,* at 301-302.[2]

That a pre-trial confrontation is illegal excludes *per se* evidence at the trial as to the extrajudicial identification but it does not *per se* exclude a judicial identification. A judicial identification is admissible despite an illegal pre-trial confrontation when the prosecution shows that the in-court identification had an independent source, that is that it was based upon observations of the suspect other than the illegal confrontation identification. This must be established by "clear and convincing evidence." And even if a judicial identification or an extrajudicial identification which should have been excluded is admitted, the admission is not prejudicial error if its introduction was harmless beyond a reasonable doubt. See *Smith and Samuels v. State, supra,* at 65. These exclusionary rules only come into play when the confrontation is illegal, whether by the absence of counsel or by denial of due process of law. They are not applicable when the confrontation is legally conducted, and, in such event, the admission of the identification evidence is governed by the rules of law of this State relating thereto.

Michael D. Cook, the appellant here, found guilty by a jury in the Circuit Court for Anne Arundel County of kidnapping, proscribed by Code, Art. 27, § 337, and robbery with a deadly weapon, Code, Art. 27 § 488, contends that the trial court erred in admitting as substantive evi-

---

2. We have distinguished between a "confrontation" within the meaning of *Wade* and *Gilbert* and a viewing of photographs. Identification by the viewing of photographs is not a critical stage of the proceedings so as to require the presence of counsel. *Barnes v. State,* 5 Md. App. 144. But we have held that the rationale of *Stovall* is applicable to a viewing of photographs and that the exclusionary rules of *Wade* and *Gilbert* apply to the admissibility of evidence relating to identification by such viewing. *Smith and Samuels v. State, supra,* at 67.

dence identity of him as the perpetrator of the crimes—
a judicial identification by the victim and testimony by
the victim that he identified the appellant at a pre-trial
lineup. He claims that the lineup was illegal, not because
of the absence of counsel,[3] but because the manner in
which it was conducted denied him due process of law.
He urges that due process of law was violated "because
appellant was the only person in the lineup who wore the
exact same clothing that was worn by the perpetrator of
the crimes which were committed the night before the
lineup was conducted."

At the trial, prior to the receipt of any evidence on
the merits, the appellant moved to suppress any evidence
as to identification of him by the victim. Out of the pres-
ence of the jury the court conducted a hearing on the
issue, and, after evidence was adduced by the appellant
and the State and argument of counsel made, ruled that
the lineup was legal and that the challenged evidence as
to identity was admissible.[4] Thus the question we must
first decide is whether the court properly determined, on
the totality of the circumstances surrounding the lineup,
that it was not so unnecessarily suggestive and condu-
cive to irreparable mistaken identification as to be a de-
nial of due process of law. If the determination of the
court that the lineup was legal was proper, no further
inquiry on the issue is required, for then the challenged
evidence was admissible.

*The Circumstances Surrounding The Lineup*

The appellant limits his challenge to the lineup to the
claim that he was placed therein wearing a yellow shirt,
yellow jacket and brownish pants, the same type of cloth-
ing the perpetrator of the crimes was wearing at the time
the crimes were committed. He does not contend that the

---

3. There was evidence sufficient for the trial court to find, as
it did, that the appellant was informed of his right to the presence
of counsel at the lineups and properly waived the right, signing a
waiver form which was introduced in evidence.

4. For a discussion of the procedure upon challenge of evidence
of identification see *Smith and Samuels v. State, supra,* at 67-70.

lineup was otherwise unfair and we believe from the evidence adduced at the hearing that it was not.

About 8:00 P.M. on 31 May 1968 David Lee Scott was robbed at gunpoint at a filling station in Anne Arundel County. He testified that he gave a description of the robber to Corporal Wilford H. Lawrence of the Maryland State Police describing the clothes the robber was wearing, his facial features, his build and the color of his hair and eyes. The description was put on the police teletype network. Corporal Harry T. Hitch of the New Castle County Police in Delaware received a teletype message that "Michael D. Cook, 6', 180 lbs., approximately 21 years, wearing a yellow shirt and jacket, reported to have been operating a '67 Maroon Pontiac G.T.O. bearing Delaware registration ('I believe that registration was 154086')" was wanted "in reference to armed robbery and kidnapping." He arrested the appellant on 1 June 1968 at his apartment in Claymont, Delaware. At the time of the arrest the appellant was in the bedroom attired in undershorts. The officer requested that he get dressed. The appellant selected the clothes; he put on a yellow shirt and took a yellow jacket with him.

The lineup was conducted in Wilmington, Delaware. Lawrence testified that he told the appellant he would be placed in a lineup with a group of men approximately his age, and his build and the victim would view the lineup. The appellant was wearing "brownish-greenish" pants, a yellow shirt and a yellow waist length jacket. The officer said that he had received from the victim "a description similar to those clothes." There were six other men in the lineup, all white males as was the appellant. They were respectively 6 feet tall, weight 145 pounds, age 18 years; 5 feet six inches tall, weight 135 pounds, age 18 years; 5 feet 9 inches tall, weight 140 pounds, age 21 years; 6 feet 1 inch tall, weight 160 pounds, age 25 years; 6 feet tall, weight 150 pounds, age 18 years; 6 feet tall, weight 165 pounds, age 19 years.

From these descriptions and from pictures of the lineup admitted in evidence we think they represented a fair approximation of the height, weight, age and general appearance of the appellant. Four of them wore short sleeve shirts. Three wore long trousers. Three wore bermuda shorts. None had on a necktie. One wore a dark colored jacket similar in type to that of the appellant. The appellant's shirt had short sleeves and he had on long trousers and no necktie. The pictures of the lineup were not in color but Lawrence said one of the men in the lineup "was wearing the same type of green pants and a yellow shirt that I considered to be almost exactly like the one wore by Mr. Cook." The victim viewed the lineup twice, (he thought it may have been three times) and each time made a positive identification of the appellant as the robber. The appellant was permitted to select his position in the lineup at each viewing and each time selected the first position. There was no suggestion made to the victim as to the man to be identified. He was told by the police that they thought they had the man who robbed him but they were not sure. He was being taken to the lineup to see if the arrestee was the one as he fit the description given them by the victim. They did not tell him the name of the suspect. The victim, called by the appellant at the hearing, said that the clothes worn by the appellant at the lineup focused his attention on the appellant. But he denied that even "part of the reason [he] picked him out of the lineup" was "because of the clothes he was wearing * * * I can recognize him right off." On cross-examination by the State the victim testified that the time of the robbery was "a little bit after eight," that he could make out the features of the robber, that the robber did not wear a mask or any sort of cover on his head or face to disguise himself, that he was in the presence of the robber for about forty-five minutes, during which time he was looking at him, that the robber forced him, at gunpoint, to enter a car and drive away with him. "We turned right on 198 and went to Laurel, made a right on Rt. 1 and went to Savage and

I don't know what number on the highway, and made a right there at Savage." During the ride he observed the robber. They left the car and the robber told him to take his belt off as he was going to tie him up. He was not tied up, however, and the robber told him to start walking into the woods. What happened next was not disclosed at the hearing but apparently the victim escaped and thereafter gave a description to the police.

The appellant testified that he was fully informed of his right to have an attorney present at the lineup and freely and voluntarily signed the waiver form. He said he was the only person in the lineup wearing a yellow shirt and yellow jacket. On cross-examination he said that when he was arrested he put on the clothes he had been wearing the night before of his own free will; he was not forced to do so. The jacket was by the front door of the apartment and he was not sure whether his wife got it for him or whether the arresting officers did so.

The trial judge applied the correct test in ruling on the conduct of the lineup. He found "under the totality of the circumstances in this case that this was a fair lineup." In arriving at the holding he made findings of fact on the evidence before him. He found that it was not the clothing worn by the appellant in the lineup that enabled the victim to make the identification; that the victim had the opportunity to observe the appellant for forty-five minutes or more, not merely during the robbery itself but while in the car with him, and had "a good look at him over a long period of time" under favorable lighting conditions; that the appellant had not been forced to wear specific clothes at the lineup; that another man in the lineup had on a shirt and trousers similar to those worn by the appellant; that another man had on a jacket; that the victim remembered the robber's face and it was due to the fact that he knew this man, he knew his face, he knew his size, he knew his mannerisms, that he was able to identify him.

' It appeared from the evidence adduced out of the presence of the jury at the hearing that the appellant had on the jacket each of the two times the victim viewed the lineup, the first viewing shortly following the second viewing. The same persons were in the lineup at each viewing. At the trial on the merits, however, it appeared that the appellant did not have the jacket on at the first viewing but did have it on at the second viewing. The court found on this subsequent evidence that the police directed the appellant to put on the jacket for the second viewing. The court then reconsidered its ruling made at the close of the evidence at the hearing. But it found that a positive identification had been made at the first viewing, at which the appellant was not wearing the exact clothing he wore at the commission of the crimes, that the identification of the appellant was not affected by the second viewing at which the appellant had on the jacket, that, in the circumstances, that the appellant had been directed to put on the jacket at the second viewing did not render the lineup unfair or the identification evidence inadmissible.

We do not think that the court was clearly wrong in its factual findings on the evidence. Md. Rule 1086. We have no difficulty in determining that the lineup as conducted at the first viewing was not *so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law.* In so determining we have considered the circumstances that the police were aware, prior to the lineup, that the victim described the robber as wearing a yellow shirt, a yellow jacket and brownish pants at the time of the commission of the crime, but we have also considered that the appellant was not forced to appear at that viewing in clothing similar to that which the robber was described as wearing and in fact did not have on the yellow jacket. As the confrontation at the first lineup was legal it did not taint the judicial identification by the victim and both it and the victim's testimony as to his identification at that viewing were admissible.

Our holding is in accord with the rationale of *Baker v. State*, 3 Md. App. 251 and *Hernandez v. State*, 7 Md. App. 355. In *Baker* the contention that the lineup was unfairly conducted was "seemingly based on the fact that [the accused] was dressed in the same clothing, except for a different hat," when he was observed at the time of the commission of the crime. We noted that the question was not raised below, invoking Md. Rule 1085, but found that the lineup was not so conducted as to affront the accused's constitutional rights as we were satisfied from the record that the identification by the witness was "not alone or primarily on the basis of the clothing he was wearing in the lineup." 3 Md. App. at 254. In *Hernandez* the accused contended that the pre-trial identification procedure was constitutionally tainted because he was the only person in the lineup wearing a blue plaid shirt, this item constituting the basis upon which the identification was made. We held that the fact that the accused appeared in the lineup in the shirt did not of itself violate due process of law, noting that the lineup occurred a few hours after the commission of the crime, that the accused was placed in the lineup wearing the clothing in which he was arrested, and that the record did not disclose that prior to the lineup the police had knowledge of the peculiar significance of the blue plaid shirt in the witness' prospective identification. 7 Md. App. at 361-362.[5] And see *Presley v. State*, 224 Md. 550.

Even if the court's ultimate ruling be interpreted as holding that the conduct of the lineup at the second viewing was illegal because the appellant was then directed to put on the jacket, we think it clear that it found that such evidence as was admitted indicating that the victim identified the appellant at that second confrontation was harmless beyond a reasonable doubt. In the circumstances here, we agree that it was.

We hold that there was no prejudicial error in the ad-

5. The question was also presented in *Rodgers v. State*, 4 Md. App. 407 but not decided by reason of lack of objection to the identification evidence at trial. at 414-415.

mission of the evidence of identification of the appellant by the victim.

In arguing the contention the appellant refers to *Foster v. State of California,* 89 S. Ct. 1127, decided 1 April 1969, in support of his contention. But in that case the circumstances surrounding the confrontations were in nowise apposite to the circumstances here. In *Foster* there was first a lineup in which the accused stood out from the other two men in the lineup by the contrast of his height and by the fact he was wearing a leather jacket similar to that worn by the robber. This did not lead to a positive identification and the police permitted a one-to-one confrontation between the accused and the witness. Even this resulted in only a tentative identification. Some days later another lineup was arranged in which the accused was the only person who had also participated in the first lineup. This finally produced a positive identification. The Court found that the pre-trial confrontations "clearly were so arranged as to make the resulting identifications virtually inevitable." 89 S. Ct. at 1129. These were not even remotely the circumstances in the case before us.

We deem it advisable to urge caution in the compelling of an accused to wear, at a confrontation, items of clothing similar to those described by a prospective identifying witness as worn by the perpetrator at the time of the commission of the crime. It would be the better practice for the suspect to appear in the lineup not attired in clothing of peculiar significance to the prospective identifying witness just as it is the better procedure that the suspect not stand out in the lineup by the contrast of his height, weight or other clearly discernible physical appearance.

## THE ADMISSION OF EVIDENCE PERTAINING TO THE ASSAULT OF THE VICTIM WITH INTENT TO MURDER

The appellant was charged in the first count of the indictment returned against him with assaulting Scott, the

robbery victim, with intent to murder. Prior to trial the appellant moved to dismiss the count on the ground that the crime was committed in Howard County. The court granted the motion upon the State's concession that it was committed in Howard County about 600 yards from the line between that county and Anne Arundel County, finding that in the circumstances, Code, Art. 27, § 590 was not applicable. The appellant then moved to exclude any evidence relating to the assault with intent to murder and the court said it would rule on the motion if and when such evidence was offered.

At the trial on the merits Scott related that on 31 May 1968 he was working at a gas station in Anne Arundel County near Fort Meade. Shortly after 8:00 P.M. a 1967 Pontiac, two door hardtop, G.T.O., maroon in color, driven by the appellant, and in which there were no other persons, drove into the station. No one else was in the station. Scott was in the back of the station and when he heard the service bell ring came out. "The guy motioned me like he didn't want anything. So I turned around and went back in the back of the station." He heard a noise and the appellant was peeking around the corner of the door. Scott walked towards the front of the bay. The appellant said, "Howdy." "I said, 'Hi'. And he said—he jerked a pistol and said, 'This is a holdup.'" The appellant ordered Scott to go into the back room and to hand over the money. Scott gave him $136, $15 of which was his and the balance that of the owner. The appellant asked if there was a rope with which he could tie Scott up or a place where he could lock him up but then said, "Get in the car, we'll go for a ride." The appellant forced Scott to drive the car and directed him to turn right on the highway by the station. Scott did so and drove to Laurel to Rt. 1, made another right and went down Rt. 1 about 8 miles to Savage, again went right down past State Perkins Hospital and two or three miles past the Hospital turned in a long, narrow driveway. There were woods and tall grass. The appellant ordered him out of the car and told him to take his belt

off so he could tie him up. At this point in the testimony defense counsel objected to any further testimony "since the court has dismissed the first count of the indictment and since these acts did not take place in Anne Arundel County and do not relate to the charges." The objection was overruled. Scott said the appellant told him to walk into the woods and he did so with the appellant about 10 feet behind him. "Just as soon as I stepped in the wood line, I heard the gun go off and I felt some powder hit the back of my neck * * * I just dove for the ground. * * * When I turned over he [the appellant] was standing over me or standing about five feet from me. * * * He cocked the gun and pulled the trigger but it didn't go off. * * * After he tried to fire it twice, why I told him to wait a minute. I told him my wife was pregnant and getting ready to have a baby and I had just got back from [Viet] Nam. * * * And he said, 'let me see your I. D. card.' So I showed him my I. D. card and he said, 'David L. Scott' and I said, 'yes'. And he said, 'Well, it is against my better judgment, but I guess I'll let you go'. And then he said, 'no, but you seen my tag number' and I said 'no I didn't'. And then he said—he said when he picked up the paper in the morning he had better not see or he'd better see that it was some guy in a Cadillac that held you up and I said, 'all right' * * * and then he said * * * if he got caught he had a brother and some friends that would come after me. And I said I wouldn't turn him in. And he said, 'Well it is against my better judgment but I guess I am going to let you go.' And then he said 'get up and start running through the woods.' And I got up and took off." The appellant had attempted to shoot Scott three times.

The challenged testimony was clearly admissible for a variety of reasons. The appellant was on trial for robbery with a deadly weapon, kidnapping, and assault and battery among other offenses related thereto. The general rule is that evidence is inadmissible to show that an accused had committed another crime unrelated to the crime charged but that rule does not deprive the

State of its right to make out its case. We think the challenged evidence tended directly to prove the appellant guilty of the crimes for which he was being tried. It tended to show that the robbery was with a deadly weapon. It tended to show the required intent in the kidnapping. The crime it showed was so linked together in point of time or circumstances that the crimes of which he was on trial could not be fully shown without proving the other and it is immaterial whether the crime incidentally shown was of the same or a different character from those on trial or that it was not exactly concurrent or that it was committed in another county. See *Wood v. State,* 191 Md. 658; *Bryant v. State,* 207 Md. 565; *Stewart v. State,* 1 Md. App. 309. And it may well have been admissible under the doctrine of *res gestae.* See *Long v. State,* 3 Md. App. 638; *Hicks v. State,* 3 Md. App. 225. We hold there was no error in the admission of the challenged evidence.

## THE ADMISSION OF TANGIBLE EVIDENCE SEIZED

Immediately after the arrest of the appellant in his apartment the arresting officer seized a gun and bullets from an automobile he had observed parked directly in front of the premises. There is no question but that the officer had probable cause to believe that the felonies of armed robbery and kidnapping had been committed and that the arrestee had committed them. He also had probable cause to believe that a '67 Maroon Pontiac G. T. O., Delaware license 154086, which he saw in front of the premises, had been used by the arrestee in the commission of the crimes. The appellant contends that the gun and bullets seized were improperly admitted in evidence. As we understand his argument with respect to the contention, he urges the application of the fruit of the poisonous tree doctrine.[6] Upon the arrest of the appellant he

6. It does not appear that he claims that the search was otherwise invalid so we need not decide that question. It may be, however, that the search was shown by the evidence to have been

was given the warnings required by *Miranda v. Arizona*, 384 U. S. 436. The officer asked him where the gun was and the appellant said that it was in the car. But the trial court found that the appellant had not effectively waived the right to the presence of counsel before the question was asked. See *Mullaney v. State*, 5 Md. App. 248. The appellant claims that challenged evidence was recovered as a result of his illegally obtained statement and that *Miranda* precludes the use of the evidence. The trial court found the evidence to be admissible under the authority of *Duckett v. State*, 3 Md. App. 563. We agree. In *Duckett* we did not find it necessary to decide whether the "fruit of the poisonous tree doctrine" is applicable in State criminal trials within the frame of reference that an improper inculpatory statement provided the source which led the police to the tangible evidence seized. We believed that the evidence, in the circumstances, would have been discovered by the police without the defendant's statement. In the case before us we think that the evidence was sufficient for the court to find that the officer, considering the information the evidence showed he had, would have searched the car for contraband or evidence of the crimes without the statement of the appellant as to the location of the gun and that the evidence was obtained from a source independent of the illegal question. The arresting officer was an experienced policeman with 15 years service. He had reliable information that a robbery had been committed with a deadly weapon, that the robber had kidnapped the victim, transporting him in the car the officer saw in front of the premises, and that there had been an "attempted homicide" of the victim. He had probable cause to believe the

---

reasonable, apart from the fruit of the poisonous tree doctrine, because the officer had the right to seize the car as used in the perpetration of the kidnapping and thus could search it, see *Johnson v. State*, 238 Md. 528; or that he had probable cause to believe that the car contained contraband or fruits of the crimes, see *Cornish and Gilman v. State*, 6 Md. App. 167. Or, in any event, the search may have been proper as made with the free and voluntary consent of the appellant. See *Hubbard v. State*, 195 Md. 103.

appellant had committed the crimes. The appellant's wife voluntarily gave to the officer $140 which she said the appellant had given her but "expressed shock that he even owned a gun. * * * She didn't even know he had a gun." We think the court was not clearly wrong in concluding that the officer, experienced as he was, would have looked for the gun and other contraband or evidence in the car even if the appellant had denied all knowledge of a weapon and that he would have found the challenged evidence in any event. In the circumstances, even though the evidence was obtained with the appellant's assistance, it was not thereby inadmissible. We hold there was no error in the admission of the evidence challenged.

### THE ADMISSION OF PROOF OF A PRIOR CRIME TO IMPEACH THE CREDIBILITY OF THE APPELLANT

The appellant testified in his own behalf. On cross-examination the State elicited from him that he had previously been convicted of a crime. The information was adduced by the State first asking the appellant if he had been convicted of a crime. Objection was made to the form of the question, the appellant arguing that the question should have been directed to a specific conviction. The court said, "I think he has a right to ask him if he was ever convicted of any crime. That has been done in Maryland for a long time." We do not think that the question as asked was prejudicially improper. Appellant then argued that the State was going to bring out that the conviction was for assault and that it would be inadmissible as unrelated to armed robbery. The court ruled that it would go to the appellant's credibility and overruled the objection. The ruling was proper. See *Stewart v. State,* 4 Md. App. 565; *Huber v. State,* 2 Md. App. 245. It was then, and without further objection, that the appellant said he had been convicted of the crime of assault in Jacksonville, Florida in March 1962 and that was all he had been convicted of. The appellant

argues on appeal that since the conviction was in 1962 he was a juvenile, and thus evidence as to the conviction was inadmissible. While the credibility of a witness cannot be attacked by asking him about his past record of juvenile offenses, *Westfall v. State,* 243 Md. 413, there is a distinction between juvenile offenses and convictions of crimes committed while a juvenile. The appellant said he was convicted of a *crime.* There was no showing or indication from the record that it was not a crime but a juvenile offense. The fact that he was convicted of the crime of assault even though he was then a juvenile, was here admissible to impeach his credibility. We find no error in its admission. We also note that the specific objections made below did not preserve for appeal the point now argued. It may be considered as not properly before us. Md. Rule 1085. And see also *Braun v. State,* 230 Md. 82.

*Judgments affirmed.*