ROBERT THOMPSON AUSTIN AND THOMAS
WILLIAMS *v.* STATE OF MARYLAND

[No. 726, September Term, 1970.]

*Decided August 9, 1971.*

The cause was argued before MORTON, ORTH and POWERS, JJ.

*Alexander R. Martick* for appellant Robert Thompson Austin. Submitted on brief by *Michael E. Kaminkow* for appellant Thomas Williams.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Roger Gladstone, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Thomas Williams and Robert Thompson Austin, jointly tried at a bench trial in the Criminal Court of Baltimore on 18 and 19 June 1970, were each convicted of robbing William Randall (1st count indictment 1300) and Gary M. Thomas (1st count indictment 1301) with a deadly weapon on 17 February 1970. Each was sentenced to 20 years on each conviction against him, the sentences to run concurrently. Each appealed.

## WILLIAMS

It has been brought to our attention that Williams was born 22 February 1953.[1] As he had not reached his 18th birthday at the time the crime was alleged to have been committed, see Code, Art. 26, §§ 70-1(c) and 70-2(e) (1), for the reasons given in *Greene v. State,* 11 Md. App. 106, the Circuit Court of Baltimore City, Division for Juvenile Causes, would have exclusive jurisdiction over him unless waived. Code, Art. 26, §§ 70-2(a) (1) and 70-16. Therefore, as to Williams, we remand the case with

---

1. Baltimore City Health Department, Notification of Birth Registration, file no. 53-04517.

direction to the Circuit Court of Baltimore City, Division for Juvenile Causes, to conduct a hearing in accordance with the present provisions of Code, Art. 26, § 70-16. In the event that court determines not to waive jurisdiction, or if the State decides not to prosecute the case further, the Criminal Court of Baltimore is directed to vacate the judgments previously entered on the convictions of Williams under indictments 1300 and 1301. If, on the other hand, the Circuit Court of Baltimore City, Division for Juvenile Causes, after the appropriate hearing, determines to waive jurisdiction, it shall so order. The record shall then be returned to this Court for determination of the questions presented on appeal.

## AUSTIN

The questions presented by Austin relate to the propriety of a judicial identification of him by the victim Thomas. Austin claims that the court erred in denying his motion to suppress.

When the indictments came on for trial Austin filed a motion "to dismiss indictments and/or to suppress the identification" of him before trial on the general issue. An evidentiary hearing on the issue began. Austin testified that he was arrested on 17 February 1970 and since held in jail. He was subsequently charged with the armed robbery of Thomas and Randall. On 22 February he attended a hearing at the Municipal Court of Baltimore City in the Western District. He had no funds to employ an attorney and none represented him at the hearing although he wanted one. The judge presiding at the hearing called out his name and he responded, identifying himself. At the time Thomas and Randall were in the courtroom. He and those witnesses were standing at the bench. At the hearing both Thomas and Randall identified Austin as the man who had robbed them. He was held for action by the grand jury. On cross-examination it was elicited that on 20 February Austin was placed in a lineup. Thomas and Randall viewed the lineup but

Austin did not know whether or not they then identified him. "Well, at the lineup, I couldn't see through it. It was dark. They brought us on the stand and I couldn't see nobody." Austin was asked how long a period of time did Thomas and Randall have to observe his face during the robbery. Austin objected. There was a bench conference "off-the-record" following which Austin stepped down "but with the understanding that all of his rights, and his right to again take the stand and give testimony in support of the motion to dismiss, and to suppress the identification of the defendant, Robert Thompson Austin, will be fully protected." All witnesses had been sequestered before any of the proceedings began and Austin now asked that he and Williams be allowed to sit other than on the front bench. Austin was seated in the fourth row, the only person in that row. Apparently Williams was seated in the second row. Trial on the merits commenced.

The State adduced testimony through Thomas which proved the corpus delicti of the robberies. He was then asked to look about the courtroom and see if he could identify the robbers. Austin objected. There was an "off-the-record" bench conference at the conclusion of which he was again asked if he could identify the robbers. He identified Austin and Williams. On cross-examination he said he had seen a photograph that morning "upstairs in the jury room" in the presence of police officers and the Assistant State's Attorney. "I wasn't shown the pictures directly. The pictures were laying on the table, and I looked at them." A number of men, including Austin, were in one photograph. Thomas said, "I would have known him. I know him from the neighborhood. I have been in and out of that store for eleven years. I know everybody around there." He did not know how the photograph came to be where he could see it. Shortly after the robberies he had given the police a description of the robbers. He said that he had testified at a hearing at the police station. Austin and Williams were there. "I don't remember them saying anything, because the officers

brought them in, and we were just standing in front of the judge. They didn't have to call them up to the stand or anything. * * * I identified them myself when the judge asked me what happened. I gave him my statement, and I told him that there was three of them there at that time." [2] They were not seated in the courtroom. He did not remember whether or not they were handcuffed. He had seen Williams before the robbery. "I have seen him around the neighborhood before. He has been in and out of the store before." The face of Austin was "familiar, but I can't say that I have seen him, coming in and out of the store." On redirect examination Thomas identified a photograph of "five Negro males" as that he had seen that morning. When he saw it on the table and looked at it he recognized the three men who were in the store during the hold-up, no. 1, no. 3 and no. 4. No. 1 and no. 4 were in the courtroom at the trial and were the persons he had judicially identified. There were five men in the lineup he attended and the photograph he had seen was of the lineup. It "adequately, and truly and accurately reflect[ed] the manner in which they were standing in that lineup." On recross-examination he stated categorically that the photograph did not help him make the in-court identification. And he was equally emphatic that Austin's presence at the preliminary hearing had nothing to do with his judicial identification of Austin. The transcript reads:

"Q. (by defense counsel): Did it affect or help you refresh — in other words, * * * did your seeing him at the preliminary hearing up at the front of the bench for ten or fifteen minutes at the preliminary hearing, have anything to do with your identifying him here today?

A. I was looking right there at him the whole time he was holding me up.

---

2. Michael Eugene Tucker was jointly indicted with Austin and Williams. The record before us does not disclose the disposition of the cases as to him.

Q. That wasn't an answer to my question.
A. No, in other words, it didn't help me; no.
Q. Didn't help you any?
A. No.

\* \* \*

Q. So, what you want us to believe is that the only reason you are identifying this man today is based on what happened, to the exclusion of everything else, in the store on February 17th?
A. That's right.
Q. You deny that the preliminary hearing, and seeing the photograph this very morning before you testified, had any affect in any way, shape, or form of your identification of this man?
A. No. What you are saying is that I deny the photograph helped me at all? No, it didn't help me at all. I would have remembered him.
Q. You would have remembered him?
A. Yes."

There came a point in the trial when the court asked defense counsel if there was any further testimony he desired to adduce on the motion to dismiss and suppress which was still pending. It was stipulated that Austin was not represented by counsel at the lineup and that evidence with the testimony of Austin previously given was all that was offered by the defense on the issue.

In denying the motion the lower court found as a fact that the police "did not exhibit the photograph to Thomas, nor did they in any way suggest that he view the same, nor did they, through any guise or plan, deliberately place said photograph in a position where the witness could easily view the same." The court found it clear that "the viewing was accidental and was not a deliberate act of the police, and not the deliberate design of the State, or of the Police Department." It found

that the lineup was improper because conducted in the absence of counsel representing Austin, and Williams, there being no evidence that he waived the right to counsel. It further found that Thomas was positive and unequivocal in his identifications at the trial. "He had ample opportunity to witness them during the hold-up. He never identified anyone else; even at the improper lineup he identified these two defendants. * * * [H]e stated with absolute certainty that neither the lineup nor the proceedings at the preliminary hearing, nor the viewing of that photograph had any affect on him at all, and he would have identified them if he had not been exposed to any of these." It concluded: "Based on all the facts of this case and the positive, unequivocal, and certain identification made by the witness Thomas, the Court is satisfied that his present identification in Court was not suggested by any photographic viewing, or any improper lineup [3] conducted in this case, or any proceedings connected with the preliminary hearing." It denied the motion.

We find that the factual findings of the lower court were not clearly erroneous and on our independent constitutional appraisal on those facts agree with its conclusion. We observe first that even when a judicial identification is tainted by an illegal confrontation the sanction is not dismissal of the indictment but exclusion of the tainted evidence. *Smith and Samuels v. State,* 6 Md. App. 59, 64-65. To the extent that Austin's motion sought dismissal of the indictments against him it was properly denied in any event. Second, assuming that the lineup, the preliminary hearing and the photographic viewing were each constitutionally infirm, whether by denial of the right to counsel or as violative of due process as impermissibly suggestive, or both, there was clear and convincing evidence that the challenged judicial identi-

3. The rule of *Coleman v. Alabama,* 399 U. S. 1, that an accused has the right to counsel at a preliminary hearing applies only to such a hearing held on or after 22 June 1970. *Billings v. State,* 10 Md. App. 31, 35.

fication was based upon observations of Austin by Thomas other than the illegal pretrial confrontations. In other words, the judicial identification had an independent source. Making our independent constitutional appraisal from the record before us, we determine that granting establishment of the primary illegality, the judicial identification of Thomas was not come at by exploitation of that illegality but instead by means sufficiently distinguishable to be purged of the primary taint. *United States v. Wade,* 388 U. S. 218, 241. We note that evidence of an identification by Thomas of Austin made at any pretrial confrontation or viewing of photographs, which was *per se* to be excluded if such procedures were illegal, was not introduced by the prosecution as substantive evidence of identification or as corroborative of the judicial identification. Such evidence properly came in only on the issue of the admissibility of the in-court identification. We hold that the lower court did not err in denying the motion to dismiss the indictments or to suppress the challenged evidence. Nor do we feel that Austin was denied due process of law "because of the totality of the circumstances surrounding his in-court identification." See *Cook v. State,* 8 Md. App. 243; *Joyner v. State,* 7 Md. App. 692; *Coit v. State,* 7 Md. App. 70.

> *As to Williams:*
>> *Case remanded for further proceedings in accordance with this opinion.*
> *As to Austin:*
>> *Judgments affirmed.*