ISAAC JOSEPH JOHNSON *v.* STATE OF MARYLAND

[No. 640, September Term, 1972.]

*Decided August 8, 1973.*

542

The cause was argued before MENCHINE, SCANLAN and DAVIDSON, JJ.

*James E. Fannon, Jr.,* for appellant.

*George A. Eichhorn, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard H. Sothoron, Jr., Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Isaac Joseph Johnson, convicted of assault with intent to murder by a jury in the Circuit Court for Prince George's County, was sentenced to imprisonment for fifteen years. He makes two contentions on appeal: (1) that his motion for acquittal should have been granted; and (2) that because of earlier taint by impermissibly suggestive photographs, the trial judge improperly permitted two witnesses to make a judicial identification.

## Legal Sufficiency of the Evidence

At about 3:00 a.m. on November 11, 1971, Blessie Griffin awakened to find a man in her bedroom. He seized her and thrice threatened to kill her if she "hollered." Undissuaded by the threats, Mrs. Griffin cried out for help. Her son, Leon H. Griffin, rushed to his mother's assistance and seized the intruder. In an ensuing struggle, Leon H. Griffin was cut on

the arm and stabbed three times in the abdomen. Both mother and son made judicial identification of the accused. Their testimony concerning the incident and their identification of the appellant, if admissible and if believed, was legally sufficient to convict. *Wilkins v. State*, 5 Md. App. 8, 21, 245 A. 2d 80, 87. An intent to murder may be inferred from his direct threats to the mother and from his subsequent repetitive stabbings of the son. *Smith v. State*, 6 Md. App. 114, 118, 250 A. 2d 272, 275.

### The Judicial Identifications

Appellant objected when Blessie Griffin was called as a witness. It was contended that a proposed courtroom identification of the accused was unconstitutionally tainted by prior impermissibly suggestive photographic identification.

The Supreme Court in *Simmons v. U. S.*, 19 L. Ed. 2d 1247, 390 U. S. 377, laid down the legal principles by which the validity and effect of pre-trial photographic identifications should be tested, saying at page 1253 [384]:

> "The danger that use of the [photographic] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 US 293, 301-302, 18 L ed 2d 1199, 1206, 87 S Ct 1967, * * * "

In *Smith and Samuels v. State,* 6 Md. App. 59, 250 A. 2d 285, this Court considered *Simmons;* explicated its relationship to the *Wade, Gilbert, Stovall* trilogy; [1] and established the procedures to be followed upon challenge. The trial judge conducted a suppression hearing in accordance with the mandate of *Smith and Samuels, supra,* at which testimony by Blessie Griffin, Leon H. Griffin and Detective E. W. Jones of the Prince George's County Police was taken.

In the course of that hearing, proposed identification of the accused by Leon H. Griffin also was brought within the purview of the motion to suppress, by added challenge to that witness's proposed courtroom identification. Although there was some confusion in the course of the testimony of Blessie Griffin and Leon H. Griffin, both rejected the contention that their proposed identification of the accused in the courtroom was influenced by photographs of the accused. Both testified that they were able to identify the accused from personal observations. Leon H. Griffin said that he could do so as the result of a face to face confrontration in the lighted hallway of his home.

Mrs. Griffin said she chose the photograph of the appellant because of her observations of that struggle; because she witnessed the subsequent departure of her assailant from her home and because she had previously seen the man in her yard. She explained that she had given the latter information to the police before viewing the photographs.

Both mother and son acknowledged that their assailant had worn a navy blue and white bandana mask, but each made clear that selection of the photograph of the appellant from a group of six was not influenced by police direction or by any suggestive process, but was based upon personal observations of his head and face. Selection by each, of the appellant's photograph, separately was made within hours after the incident.

---

1. 388 U. S. 218; 388 U. S. 263; 388 U. S. 293.

During cross-examination by appellant's counsel, Mrs. Griffin gave the following testimony:

"Q That is why you picked that one out, because you recognized his face?

A And his walk, too, in walking. And I was looking at the side. He had on this mask. I was just stunned, but I noticed the side of his head and the heavy eyelashes, the mask still on, and the way — you couldn't deny him no way; no kind of way."

Leon H. Griffin in his testimony at the hearing said:

"Q How many photographs did you look at?

A I didn't need but one to look at.

Q But how many did you view all together?

A It was about 4 or 5 different people.

Q How were they arranged, if you know? Separate photographs?

A Yes.

Q Who showed you the photographs?

A This fellow at the robbery squad. I don't recall his name.

Q And when you viewed those photographs, what, if anything, did the detective say?

A Nothing. He just asked me could I identify the man.

THE COURT: Could you what?

THE WITNESS: Could I identify the individual.

By Mr. Sothoron:

Q Did he point to anybody in particular?

A Nobody.

Q Did anybody point to any photograph?

A Nobody.

Q Did you make a selection?

A I made my own selection.

Q Who did you pick?

A I picked that man right there.

Q Why did you pick him?

A Because that was the man. I could tell even with that handkerchief around his mouth. I can always tell by the eyes of any man. To be an Army man you would do it that way."

Detective Jones testified that he separately showed Blessie Griffin and Leon H. Griffin six photographs; that the photographs were placed face up on a desk in two rows of three. Each was told not to pick up the photographs but asked to look at the photographs to see if they recognized their assailant. He said no suggestion was made to mother or son and that the five other individuals depicted in the six photographs would not tend to produce identification of the accused. He said that both the mother and son selected the photograph of the appellant without hesitation. The principal basis in this Court for the contention that judicial identification was tainted is the circumstance that appellant alone was wearing a blue jacket. At the suppression hearing this point was not stressed in cross-examination. The point was not argued to the trial judge at all. At the substantive trial the State did not offer the prior identification as substantive evidence. Mrs. Griffin, however, was asked on cross-examination whether she had made identification of the appellant's photograph because of his clothing. Her reply was: "I didn't give the clothing a thought * * *." At the conclusion of the suppression hearing the trial judge said:

"I think there is some confusion here about photographs. I think both witnesses have testified in confusion. The only thing that there is no confusion about is the fact that when the six photographs were laid out in front of them the night of the incident, the Court is convinced there was no suggestion at that time by anyone as to whom they should pick by looking at the composite of the six photographs that evidently were shown to the victims. The layout, the physical features of all of the photographs, they don't appear to im-

permissibly suggest anything. They are all Negro males, about the same build, different haircuts.

So while there is some confusion as to what pictures the witnesses today testify they saw, and there is some confusion as to whether it was a composite or individual pictures, there is no confusion, by way of the police officer's testimony, that the pictures were in fact separated, were all color photographs. And the Court is convinced that the photographic identification at the time it was made at the police station was not impermissibly suggested.

Accordingly, the motion to suppress the in-court identification is overruled."

At the conclusion of all of the evidence a second motion to strike the identification testimony of the mother and son was made and was rejected, the trial judge saying:

"* * * the Court feels that the photographs as shown to the victims was not so prejudicially tainted as to render the photographs illegal. The Court finds that the only difference in all of the photographs is that the defendant appears to be dressed in a dark jacket, dark clothing. There are other photographs of other people in dark jackets. And I feel the same now as I did when I ruled on it initially, that it is not so tainted to make it impermissibly suggestive and your motion is denied."

In *Presley v. State*, 224 Md. 550, 168 A. 2d 510, wherein the accused was wearing the same attire as during his attack, the Court of Appeals said at page 557 [514]:

"There was searching cross examination by appellant's counsel directed to showing that the identification was made because the accused wore the same attire in the line-up as he had during the attack. Suffice it to say that we find no indication that the State took any unfair or prejudicial ad-

vantage of the accused in arranging for the line-up and that the careful and definite identification of the accused by the prosecutrix was free from any previous coaching or suggestion as to his identity. We think the evidence concerning the appellant's identification by the victim in the line-up was for the proper consideration by the jury and involved no reversible error in this case."

In *Baker v. State*, 3 Md. App. 251, 238 A. 2d 561, the accused again was shown in a line-up while dressed in the same clothing allegedly worn in the home of his victim. We said at page 254 [564]:

"* * * we are satisfied from the record before us that Mrs. Williams' identification was predicated on her close observation of appellant's posture, stance, height and weight, and of his voice which she heard again at the line-up, and not alone or primarily on the basis of the clothing that he was wearing in the line-up."

In *Hernandez v. State*, 7 Md. App. 355, 255 A. 2d 449, again it was suggested that pre-trial identification procedures were constitutionally tainted because the accused was the only person in the line-up wearing a blue plaid shirt. We said at page 361 [453]:

"* * * any confrontation between a victim of, or an eyewitness to a crime, and the accused for identification purposes, including a photographic identification, may be conducted under conditions so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. *Thompson v. State*, 6 Md. App. 50; *Baldwin v. State*, 5 Md. App. 22; *Gibson v. State*, 5 Md. App. 320. But whether an accused's right of due process of law was violated in the conduct of such a confrontation depends on the totality of the circumstances surrounding it,

> *Stovall v. Denno, supra*, but a photographic identification will be set aside only if the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, *Simmons v. United States, supra.* * * * the fact that appellant appeared in the lineup wearing a blue plaid shirt does not of itself render the lineup so unnecessarily suggestive and conducive to irreparable mistaken identification as to constitute a denial of due process of law. Appellant's arrest and the ensuing lineup occurred only a few hours after the crime was committed, and it is apparent that appellant was placed in the lineup wearing the clothing in which he was arrested. The police are not required to stage a masquerade by dressing all of the men in the lineup in similar attire, *Presley v. State, supra*, at page 556, and there is nothing in the record before us indicating that prior to the lineup the police had knowledge of the peculiar significance of the blue plaid shirt in Mrs. Tamassia's prospective identification."

In *Cook v. State*, 8 Md. App. 243, 259 A. 2d 326, we considered and discussed *Presley, Baker* and *Hernandez*, all *supra*, again rejecting the contention that the wearing of particular clothing by an accused at a pre-trial confrontation alone would effect a constitutional taint upon a judicial identification, saying at page 253 [332]:

> "Our holding is in accord with the rationale of *Baker v. State*, 3 Md. App. 251 and *Hernandez v. State*, 7 Md. App. 355. In *Baker* the contention that the lineup was unfairly conducted was 'seemingly based on the fact that [the accused] was dressed in the same clothing, except for a different hat,' when he was observed at the time of the commission of the crime. We noted that the question was not raised below, invoking Md. Rule 1085, but found that the

lineup was not so conducted as to affront the accused's constitutional rights as we were satisfied from the record that the identification by the witness was 'not alone or primarily on the basis of the clothing he was wearing in the lineup.' 3 Md. App. at 254. In *Hernandez* the accused contended that the pre-trial identification procedure was constitutionally tainted because he was the only person in the lineup wearing a blue plaid shirt, this item constituting the basis upon which the identification was made. We held that the fact that the accused appeared in the lineup in the shirt did not of itself violate due process of law, noting that the lineup occurred a few hours after the commission of the crime, that the accused was placed in the lineup wearing the clothing in which he was arrested, and that the record did not disclose that prior to the lineup the police had knowledge of the peculiar significance of the blue plaid shirt in the witness' prospective identification. 7 Md. App. at 361-362.[5] And see *Presley v. State*, 224 Md. 550." [Footnote omitted].

The quoted comments from *Presley, Baker, Hernandez* and *Cook,* all *supra,* apply with equal or greater force to the subject case. Mrs. Griffin had seen her assailant before the night of the incident; she emphasized that she could have identified the man without ever having seen his photograph. She was vehement that her courtroom identification was not influenced by that showing but was based upon personal observation on the night of the event; from the fact that he limped, and from her earlier observation of the accused long before the offense. There was literally no evidence that the police had by word or deed guided her attention to the selection of the photograph she chose.

Leon H. Griffin was equally emphatic that his courtroom identification was not influenced or affected by the prior photographic viewing. He too denied that police did or said

anything to guide him to the photograph of the accused. He stressed that he alone made the choice without hesitation because he recognized his assailant.

There is no indication that the police were conscious of any special significance in the blue attire of the accused. Indeed, the initial confrontation between the accused and the police occurred with the appellant in a condition of partial undress at his own home. He entered his home and clothed himself in the attire of his own selection when he accompanied the police to the Seat Pleasant Police Station.

The trial court after the suppression hearing found as a fact that there was nothing suggestive in the photographic identification procedures. That conclusion was fully supported by substantial evidence. We do not, in cases wherein infringement of a constitutional right is asserted, blindly accept the trial court's appraisal of the totality of the circumstances. However, his factual determinations are entitled to weight. We have given careful consideration to the entire record and are persuaded that the totality of the circumstances indicates no denial of due process to the accused in this case. *Austin and Williams v. State*, 12 Md. App. 629, 635, 280 A. 2d 17, 21.

*Judgment affirmed.*