474 A.2d 1305

**Bernard WEBSTER**

v.

**STATE of Maryland.**

**Victor Salvadore JOHNSON, a/k/a Salvadore Victor Johnson**

v.

**STATE of Maryland.**

**Nos. 116, 128, Sept. Term, 1983.**

Court of Appeals of Maryland.

May 25, 1984.

Gerald W. Vahle, Towson (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Deborah K. Chasanow, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Bernard A. Penner, Asst. Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty., and Jonathan Scott Smith, Asst. State's Atty., for Baltimore Co., Towson, on the brief), for appellee. appellee.

Argued before SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

CHARLES E. ORTH, Jr., Judge, Retired, specially assigned.

■ These appeals are concerned with lineups. A lineup, also known as an "identification parade" or "showup," is arranged by the police investigating the commission of a crime. It is a confrontation between a suspect and prospective identifying witnesses, and its purpose is to obtain evidence establishing that the suspect is the criminal agent. It is usually conducted at a police station under carefully controlled conditions. The suspect is exhibited amidst other persons similar to him in appearance, and the assemblage is viewed by the various witnesses in turn. The position of the suspect in the line may be changed between viewings. Frequently, lights or one-way windows and microphones are so utilized that the witnesses can see and hear the persons exhibited, but the persons exhibited cannot see or hear the witnesses.

■ An identification made at a lineup is referred to as an extra-judicial or out-of-court identification. At the trial, the prosecution may seek to have evidence of an identification made at a lineup admitted, and, under the impartial eye of the presiding judge, may also call upon a witness to identify

the suspect (now an accused) in the courtroom. This latter identification is referred to as a judicial or in-court identification. The admissibility of evidence of such judicial and extra-judicial identifications is the crux of these appeals.

I

## THE LAW RELATING TO LINEUPS

(a)

*The Maryland Law Prior to Wade—Gilbert—Stovall*

■ At the time the *Wade—Gilbert—Stovall* trilogy of opinions was decided by the Supreme Court of the United States [1] it was the general rule in this State that a judicial identification of the accused was admissible. It was also the general rule that the testimony of a witness that he had made a prior extra-judicial identification "should be admitted for the purpose of corroborating the witness and bolstering his credibility...." *Judy v. State,* 218 Md. 168, 174, 146 A.2d 29 (1958). Testimony by a police officer or some third party as to an extra-judicial identification was admissible when made under circumstances precluding the suspicion of unfairness and unreliability, provided that the out-of-court identifier was present at trial and subject to cross-examination. *Walters v. State,* 242 Md. 235, 239, 218 A.2d 678 (1966); *Johnson v. State,* 237 Md. 283, 289–291, 206 A.2d 138 (1965). Such testimony was admissible whether or not the out-of-court declarant made a judicial identification, and thus was admissible not only as corroboration of a judicial identification but as substantive evidence of criminal agency. *Johnson* at 289, 206 A.2d 138. *See Proctor v. State,* 223 Md. 394, 398–400, 164 A.2d 708 (1960); *Basoff v. State,* 208 Md. 643, 650–651, 119 A.2d 917 (1956). This was all set out in *Smith and Samuels v. State,* 6 Md.App. 59,

---

**1.** *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, each decided 12 June 1967.

63–64, 250 A.2d 285, *cert. denied, Smith v. State,* 254 Md. 720, *cert. denied, Samuels v. State,* 255 Md. 743 (1969), *cert. denied, Samuels v. Maryland,* 397 U.S. 1057, 90 S.Ct. 1402, 25 L.Ed.2d 674 (1970).

### (b)
### *Constitutional Rights As To A Lineup*
### (1)
### *The Fifth Amendment Privilege Against Self-Incrimination*

The Fifth Amendment privilege against self-incrimination [2]

"offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 1832, 16 L.Ed.2d 908 (1966).

"None of these activities becomes testimonial within the scope of the privilege because required of the accused in a pre-trial lineup." *United States v. Wade,* 388 U.S. 218, 223, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967).

### (2)
### *The Sixth Amendment Right To Assistance Of Counsel*

*United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and *Gilbert v. California,* 388 U.S. 263, 87

---

**2.** The Fifth Amendment to the Constitution of the United States states: "No person ... shall be compelled in any criminal case to be a witness against himself...." It has been extended to the states through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 3, 84 S.Ct. 1489, 1490, 12 L.Ed.2d 653 (1964).

The Maryland Declaration of Rights has a comparable provision, the "People of the State of Maryland" declaring, "That no man ought to be compelled to give evidence against himself in a criminal case." Article 22. The Maryland provision "has long been recognized as being in pari materia with its federal counterpart." *Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021 (1979).

S.Ct. 1951, 18 L.Ed.2d 1178 (1967) held "that a post-indict-
ment pretrial lineup at which the accused is exhibited to
identifying witnesses is a critical stage of the criminal
prosecution; that police conduct of such a lineup without
notice to and in the absence of his counsel denies the
accused his Sixth [and Fourteenth] Amendment right to
counsel . . ." [3] and, that absent a waiver of the right, the
confrontation is illegal. *Gilbert* at 272, 87 S.Ct. at 1956.
*Wade* and *Gilbert* then fashioned exclusionary rules regard-
ing identifying evidence if its source was a lineup tainted by
the absence of counsel, as follows:

1) The in-court identifications of the accused at such
confrontations are to be excluded unless the prosecution
establishes by clear and convincing evidence that the
in-court identifications were based upon observations of
the suspect other than the confrontation identifications,
that is that they had an "independent source". *Wade*, 388
U.S. at 240 and 242, 87 S.Ct. at 1939.

2) Evidence that witnesses identified the accused at
such a confrontation is *per se* to be excluded. *Gilbert*,
388 U.S. at 272–274, 87 S.Ct. at 1956–1957.

3) The admission of evidence to be excluded under 1)
and 2) is prejudicial error unless, in any event, its intro-

---

**3.** The Sixth Amendment to the Constitution of the United States
provides: "In all criminal prosecutions, the accused shall enjoy the
right . . . to have the Assistance of Counsel for his defense." The right
is applicable to the states through the Fourteenth Amendment. *Gide-
on v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Article 21, Declaration of Rights, Constitution of Maryland has a
comparable clause, the "People" of the State declaring: "That in all
criminal prosecutions, every man hath a right . . . to be allowed
counsel. . . ." The appeals are presented to us only in the context of
the Sixth Amendment right. However, we now consider the right to
counsel clause in Art. 21 as in *pari materia* with the right to counsel
under the Sixth Amendment. *Williams v. State,* 292 Md. 201, 217–218,
438 A.2d 1301 (1981). *See Rutherford v. Rutherford,* 296 Md. 347,
357–358, 464 A.2d 228 (1983). *Compare Raymond v. State ex rel.
Szydlouski,* 192 Md. 602, 607, 65 A.2d 285 (1949).

duction was harmless error. *Wade,* 388 U.S. at 242, 87 S.Ct. at 1940; *Gilbert,* 388 U.S. at 274, 87 S.Ct. at 1957.[4] *See Smith and Samuels,* 6 Md.App. at 65, 250 A.2d 285.

The rule set out in (1) above, with respect to the admission of evidence of in-court identifications, applies the test quoted in *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). *Wade,* 388 U.S. at 241, 87 S.Ct. at 1939. *See Smith and Samuels,* 6 Md.App. at 65, 250 A.2d 285. The Supreme Court gave examples of the various factors which must be considered in the application of the *Wong Sun* test:

> "[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." *Wade,* 388 U.S. at 241, 87 S.Ct. at 1940.

The Court of Special Appeals discussed *Wade* and *Gilbert* at length in *Tyler v. State,* 5 Md.App. 265, 246 A.2d 634 (1968), *cert. denied,* 252 Md. 733 (1969), *cert. denied,* 405 U.S. 1039, 92 S.Ct. 1317, 31 L.Ed.2d 579 (1972); in *Palmer v. State,* 5 Md.App. 691, 249 A.2d 482 (1969); and in *Smith and Samuels,* 6 Md.App. 59, 250 A.2d 285.

It recognized that the precise holdings of *Wade* and *Gilbert* went only to post-indictment lineups, *Tyler,* 246 A.2d at 638, but it believed that the rationale of the holdings, for reasons set out in *Palmer,* 5 Md.App. at 695–696, 249 A.2d 482, mandated that the exclusionary rules applied also to pre-indictment lineups and to other pre-trial confrontations,

---

**4.** *Stovall* held that *Wade* and *Gilbert* affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after 12 June 1967. 388 U.S. at 296, 87 S.Ct. at 1969.

before or after indictment, which violated constitutional standards and which were not subject to fair and meaningful objective review later at trial. *Smith and Samuels,* 6 Md.App. at 64, 250 A.2d 285. The intermediate appellate court saw in *Wade* and *Gilbert* indication, implicit at the least, that their holdings were not to be limited to post-indictment lineups. It so held. *Palmer,* 5 Md.App. at 696, 249 A.2d 482. Thereafter, in this jurisdiction for a period of some four years, the *Wade-Gilbert* holdings were consistently applied without regard to whether the confrontation was post-indictment or pre-indictment. *Jackson v. State,* 17 Md.App. 167, 169, 300 A.2d 430, *cert. denied,* 268 Md. 749 (1973). Then on 7 June 1972 the Supreme Court decided *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). *Kirby* made clear that *Wade* and *Gilbert* did not mean what the Court of Special Appeals thought those cases meant.[5]

*Kirby* was decided on these facts. Two police officers stopped Thomas Kirby and a companion, Ralph Bean, on a Chicago street.[6] Kirby and Bean had certain articles in their possession bearing the name of Willie Shard. When no satisfactory explanation for the possession of these articles was forthcoming, the officers arrested Kirby and Bean and took them to the police station. The officers then learned that Shard had reported that he had been robbed. A police car was dispatched to pick up Shard, and he was brought to the police station. "Immediately upon entering the room in the police station where [*Kirby* ] and Bean were

---

5. The Court of Special Appeals was not alone in its interpretation of *Wade* and *Gilbert. Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), points out that "[t]he issue of applicability of *Wade* and *Gilbert* to pre-indictment confrontation has severely divided the courts." *406 U.S. at 687, n. 5, 92 S.Ct. at 1881, n. 5.*

6. "The officers stopped [*Kirby* ] and his companion because they thought [*Kirby* ] was a man named Hampton, who was 'wanted' in connection with an unrelated criminal offense. The legitimacy of this stop and the subsequent arrest is not before [the Court]." *Kirby v. Illinois,* 406 U.S. at 684, n. 1, 92 S.Ct. at 1879 n. 1.

seated at a table, Shard positively identified them as the men who had robbed him two days earlier." *Kirby*, 406 U.S. at 684–685, 92 S.Ct. at 1879–1880. No lawyer was present and neither Kirby nor Bean had been advised of any right to the presence of counsel. More than six weeks later Kirby and Bean were indicted for the robbery of Shard. A pretrial motion to suppress Shard's identification testimony was denied, and at the trial Shard described his identifications at the police station and made an in-court identification of Kirby and Bean as the men who had robbed him. The jury found both men guilty, and Kirby's conviction was affirmed on appeal. The appellate court held that the admission of Shard's testimony was not error because the *Wade-Gilbert* exclusionary rules were not applicable to pre-indictment confrontations. The Supreme Court granted certiorari limited to that issue.

The opinion announcing the judgment of the Court[7] concluded that a showup after arrest, but before the initiation of any adversary criminal proceeding, whether by way of formal charge, indictment, information, arraignment, or preliminary hearing of the type envisioned in *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) is not a criminal prosecution at which the suspect is entitled to counsel. The plurality opinion stated that the *Wade-Gilbert* exclusionary rule arose from the guarantee of the right to counsel contained in the Sixth and Fourteenth Amendments. Then the plurality opinion observed: "In a line of constitutional cases in this Court stemming back to the Court's landmark opinion in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), it has been firmly established that a person's Sixth and Fourteenth Amendment right to

---

**7.** A majority of the Court concurred in the result reached in the opinion announcing the judgment of the Court. Stewart, J., announced the Court's judgment and delivered an opinion in which Burger, C.J., and Blackmun and Rehnquist, JJ., joined. Burger, C.J., filed a concurring statement. Powell, J., filed a statement concurring in the result. Brennan, J., filed a dissenting opinion, in which Douglas and Marshall, JJ., joined. White, J., filed a dissenting statement.

counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." 406 U.S. at 688, 92 S.Ct. at 1881. The opinion explained:

"The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." *Id.* at 689–690, 92 S.Ct. at 1882.

The opinion noted that the Court was asked in the case before it "to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings." *Id.* at 690, 92 S.Ct. at 1882. It said flatly: "We decline to do so." *Id.* It recalled that less than a year after *Wade* and *Gilbert* were decided, the rule of those decisions was explained in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) as follows: "The rationale of those cases was that an accused is entitled to counsel at any 'critical stage of the *prosecution,*' and that a post-indictment lineup is such a 'critical stage.' " *Kirby,* 406 U.S. at 690, 92 S.Ct. at 1883, *quoting Simmons,* 390 U.S. at 382–383, 88 S.Ct. at 970. (Emphasis supplied in *Kirby* ). The *Kirby* opinion continued: "We decline to depart from that rationale today by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever." 406 U.S. at 690, 92 S.Ct. at 1883.

The Supreme Court has not retreated from its decision in *Kirby* nor modified it in any way, expressly or by implication. In fact, the Court has consistently affirmed it. In

*United States v. Mandujano*, 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976), the Court declared, citing *Kirby:* "No criminal proceedings had been instituted against respondent, hence the Sixth Amendment right to counsel had not come into play." *Id.* at 581, 96 S.Ct. at 1779. In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) the Court said that the basic contours of *Kirby*, "which are identical in state and federal contexts ... are too well established to require extensive elaboration here." *Id.* at 398, 97 S.Ct. at 1239. In *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), the Court restated and applied the *Kirby* rule: "[T]he plurality opinion made clear that the right to counsel announced in *Wade* and *Gilbert* attaches only to corporeal identifications conducted 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'" *Id.*, 434 U.S. at 226–227, 98 S.Ct. at 464, quoting *Kirby*, 406 U.S. at 689, 92 S.Ct. at 1882. The Court continued: "This is so because the initiation of such proceedings 'marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable.'" *Id.* 434 U.S. at 227, 98 S.Ct. at 464, *quoting Kirby*, 406 U.S. at 690, 92 S.Ct. at 1882. The rule was reiterated in *Estelle v. Smith*, 451 U.S. 454, 469–470, 101 S.Ct. 1866, 1876, 68 L.Ed.2d 359 (1981). *See United States v. Ash*, 413 U.S. 300, 321–322, 93 S.Ct. 2568, 2579–2580, 37 L.Ed.2d 619 (1973) (Stewart, J., concurring).

In the light of *Kirby*, the Court of Special Appeals, in *Jackson v. State*, 17 Md.App. 167, 300 A.2d 430, *cert. denied*, 268 Md. 749 (1973), looked again at the position it had taken and applied. It said: "The decision of this Court that the holdings of *Wade* and *Gilbert* were to be applied to pre-indictment as well as post-indictment confrontations was predicated upon our belief that such application was constitutionally compelled. Now that the Supreme Court has made clear that our belief was ill founded, we abandon

our position." *Id.* at 171–172, 300 A.2d 430. Henceforth, the intermediate appellate court declared,

"[t]he holdings of *Wade* and *Gilbert* with respect to the constitutional right to counsel are to be invoked only as to those confrontations occurring at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. Therefore, the exclusionary rules based on right to counsel are not to be imposed upon testimony concerning an identification that took place before the commencement of the 'criminal prosecution' within the meaning of *Kirby.*" *Id.*

Of course, our denial of a petition for a writ of certiorari as to *Jackson* does not put the imprimatur of this Court on an opinion of the Court of Special Appeals. But on 26 July 1974 we decided *Foster and Forster v. State,* 272 Md. 273, 323 A.2d 419, *cert. denied, Foster v. Maryland,* 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974). In that opinion we recognized that under *Kirby* "the *per se* exclusionary rules of *Wade-Gilbert* were to be applied only at or after the time that adversary judicial proceedings had been initiated against a defendant by way of formal charge, preliminary hearing, indictment, information or arraignment." 272 Md. at 284, 323 A.2d 419. And we noticed with approval that, in light of *Kirby,* the Court of Special Appeals had abandoned its position that *Wade* and *Gilbert* applied to pre-indictment confrontations. *Id.* at 285, 323 A.2d 419. In *Utt v. State,* 293 Md. 271, 443 A.2d 582 (1982), we referred to *Kirby* as holding that "[a] post-indictment lineup is a critical stage of a criminal prosecution, but the right to counsel does not attach to a lineup before any charges have been brought." *Id.* at 282, 443 A.2d 582. In short, it is now the firmly established law of this state that with respect to lineups conducted by the police to elicit evidence of the criminal agency of a suspect, the right to counsel guaranteed by the Sixth and Fourteenth Amendments does not attach before the initiation of adversary judicial criminal proceedings by way of indictment, information, other for-

mal charge, arraignment, or a preliminary hearing which is within the context of *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387.

### (3)

#### ' *Due Process of Law*

■ Although a defendant may not be entitled to the application of *Wade* and *Gilbert* to his case because the lineup in which he was exhibited was not illegal in that it was not tainted by a Sixth Amendment right to counsel violation, there, nevertheless, "remains open to all persons to allege and prove ... that the confrontation resulted in such unfairness that it infringed his right to due process of law."[8] *Stovall v. Denno,* 388 U.S. 293, 299, 87 S.Ct. 1967, 1971, 18 L.Ed.2d 1199 (1967). The right to due process of law is guaranteed by the Fifth Amendment, applicable to the federal government, and by the Fourteenth Amendment, applicable to the states.[9] "[D]ue process protects the

---

**8.** *Wade, Gilbert* and *Stovall* placed the Maryland rule that identification evidence is admissible if obtained under "circumstances precluding suspicion of unfairness or unreliability" on federal constitutional due process grounds, *Foster and Forster v. State,* 272 Md. 273, 286, 323 A.2d 419, *cert. denied, Foster v. Maryland,* 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974).

**9.** "No person shall ... be deprived of life, liberty, or property, without due process of law...." Fifth Amendment to the Constitution of the United States.

"Nor shall any State deprive any person of life, liberty, or property, without due process of law...." Fourteenth Amendment to the Constitution of the United States.

The "People of the State of Maryland" declared in Article 24 of the Declaration of Rights, Constitution of Maryland, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." The phrase "law of the land" is synonymous with "due process of law" as used in the Fifth and Fourteenth Amendments to the United States Constitution. *Horace Mann League v. Board,* 242 Md. 645, 685, 220 A.2d 51, *cert. denied,* 385 U.S. 97, 87 S.Ct. 317, 17 L.Ed.2d 195 (1966). *See Crawford v. State,* 285 Md. 431, 452, n. 3., 404 A.2d 244 (1979). This Court is not at liberty to set up the Maryland concept of due process against control-

accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *Moore v. Illinois,* 434 U.S. at 227, 98 S.Ct. at 464; *Kirby v. Illinois,* 406 U.S. at 690–691, 92 S.Ct. at 1882–1883; *Neil v. Biggers,* 409 U.S. 188, 196–199, 93 S.Ct. 375, 380–382, 34 L.Ed.2d 401 (1972). *See generally Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

It was in *Stovall* that the Court first gave notice that the suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury. *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382. The Court now recognizes four degrees of "taint" on due process grounds with respect to an extra-judicial corporeal confrontation. The confrontation may be:

(1) Suggestive, but permissibly so. *See Stovall,* 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199].

(2) Impermissibly (unnecessarily) suggestive. *See Biggers,* 409 U.S. 188 [93 S.Ct. 375, 34 L.Ed.2d 401].

(3) So impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Id.* at 198 [93 S.Ct. at 381].

(4) So impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification. *See Stovall,* 388 U.S. at 301–302 [87 S.Ct. at 1972]. *Simmons,* 390 U.S. at 384 [88 S.Ct. at 971]. *Biggers,* 409 U.S. at 198, 93 S.Ct. at 381.

The Court fashioned exclusionary rules depending upon the degree of taint of the confrontation. The standard in determining the admissibility of identification testimony is that of fairness required by the constitutional guarantee of due process. *Brathwaite,* 432 U.S. at 113, 97 S.Ct. at 2252. With respect to a confrontation tainted to

---

ling decisions of the United States Supreme Court. *Raymond v. State ex rel. Szydlouski,* 192 Md. at 610, 65 A.2d 285.

(1) *the fourth degree* (so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification):

 (a) judicial and extra-judicial identifications are *per se* to be excluded. *See Brathwaite,* 432 U.S. 98 [97 S.Ct. 2243, 53 L.Ed.2d 140]; *Biggers,* 409 U.S. 188 [93 S.Ct. 375, 34 L.Ed.2d 401]; *Simmons,* 390 U.S. 377 [88 S.Ct. 967, 19 L.Ed.2d 1247];

(2) *the third degree* (so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification):

 (a) extra-judicial identification is to be *per se* excluded. *See Biggers* [409 U.S.] at 198 [93 S.Ct. at 381]:

 (b) judicial identification is admissible if "reliable." *Brathwaite; Biggers; Simmons;*

(3) *the second degree* (impermissibly suggestive) and *the first degree* (suggestive, but permissibly so):

 (a) judicial and extra-judicial identifications are admissible if "reliable." *Id.*

"[A]s *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process." *Biggers* 409 U.S. at 198, 93 S.Ct. at 382. The test of admissibility is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199, 93 S.Ct. at 382. *See Brathwaite* 432 U.S. at 106–107 and 114, 97 S.Ct. at 2249 and 2253; *Stovall* 388 U.S. at 302, 87 S.Ct. at 1972. "[R]eliability is the linchpin...." *Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253.[10]

---

**10.** It is obvious that neither a judicial nor an extra-judicial identification could be reliable if the confrontation was so impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification. If the misidentification is "irreparable" the damage cannot be "repaired" or overcome. Thus the *per se* exclusionary rule is called for. And the Court reasoned, the same is true of an extra-judicial identification when the likelihood of misidentification although not irreparable is "very substantial."

In *Biggers,* the Court set out the factors to be considered in evaluating the likelihood of misidentification. They include

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* 409 U.S. at 199–200, 93 S.Ct. at 382.

These factors were iterated and applied in *Brathwaite,* 432 U.S. at 114–117, 97 S.Ct. at 2253–2254.[11]

We emphasize what is obvious from the Supreme Court's opinions. It has fashioned two sets of exclusionary rules with respect to the admission of evidence tainted by reason of having as its source a confrontation which is constitutionally infirm. One set concerns those confrontations at which the right to counsel was not satisfied. The other applies to those confrontations which infringed the right to due process. Although the factors to be considered in applying the rules are similar, the two sets call for different standards and are separate and distinct.

(c)

*The Statutory Right To Counsel At A Lineup*

■ When *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) made applicable to the states through the federal Constitution's Fourteenth Amendment that Constitution's right to counsel embodied in the Sixth Amendment, the Court made known that "in our adversary system of criminal justice, any person haled into court, who

---

**11.** The Supreme Court observed in *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977): *"Stovall,* with its reference to 'the totality of the circumstances,' . . . and *Biggers* with its continuing stress on the same totality, . . . did not, singly or together establish a strict exclusionary rule or new standard of due process." *Id.* at 113, 97 S.Ct. at 2252. *Stovall* protected "an *evidentiary* interest and, at the same time [recognized] the limited extent of that interest in our adversary system." *Id.* (Emphasis in original).

is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Id.* at 344, 83 S.Ct. at 796. *See Anders v. California,* 386 U.S. 738, 741–742, 87 S.Ct. 1396, 1398–1399, 18 L.Ed.2d 493 (1967); *Douglas v. California,* 372 U.S. 353, 357–358, 83 S.Ct. 814, 816–817, 9 L.Ed.2d 811 (1963). In 1971, the General Assembly enacted legislation to furnish indigents with counsel in criminal proceedings. Md.Code (1957, 1983 Repl.Vol.) Art. 27 A, §§ 1–14. The announced policy was not only "to provide for the realization of the constitutional guarantees of counsel in the representation of indigents ... in criminal and juvenile proceedings within the State ..." but also "to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland...." Art. 27 A, § 1. The Office of Public Defender was established in the executive branch of the government, § 3, and the duty of the Public Defender to provide legal representation for any eligible indigent defendant was spelled out, § 4. The extent of the representation was designated in § 4(d). It

"shall extend to all stages in the proceedings, including custody, interrogation, preliminary hearing, arraignment, trial, and appeal, if any, and shall continue until the final disposition of the cause, or until the assigned attorney is relieved by the Public Defender or by order of the court in which the cause is pending." *Id.*

It is clear that legal representation by the Public Defender is not limited to those proceedings in which the Sixth Amendment demands the assistance of counsel; the statute contemplates such representation in certain areas beyond the reach of that guarantee. *See, e.g.,* § 4(b)(2) as explicated by § 2(h)(2). The Supreme Court has recognized that a post-indictment pretrial lineup is a critical stage of a criminal prosecution, invoking the Sixth Amendment right to counsel. *Gilbert,* 388 U.S. at 272, 87 S.Ct. at 1956. Although under that Court's reasoning the right does not attach to a pre-indictment lineup, such a lineup is neverthe-

less a critical stage for the suspect, who, of course, is in custody at the time. Even though a lineup is not encompassed within the types of cases designated in § 4(b) as calling for the assistance of the Public Defender, we believe that such a confrontation, arranged by the police, at which a suspect is exhibited in order to obtain evidence that he is the criminal agent, is within the ambit of the Public Defender statute whether conducted before or after the initiation of adversary judicial criminal proceedings in the contemplation of *Kirby*.

Neither the federal nor the State Constitution provides sanctions when the rights guaranteed are infringed. But the Supreme Court has found it necessary to fashion sanctions when violations of the federal Constitution affect the administration of justice. The Public Defender statute does not set out sanctions to be imposed when its mandates are not satisfied. Of course, the sanction to be imposed with respect to the Public Defender or his representative who is delinquent in his duties is usually a matter for the executive department, but, when the delinquency adversely affects the fairness of a trial, it is encumbent upon the judiciary to assure that the defendant is not thereby prejudiced. We consider, therefore, the admissibility of identification evidence emanating from a lineup which was illegal because the Public Defender did not furnish the suspect exhibited the assistance of counsel required by the statute.

We first observe that when a lineup is illegal in such circumstances, the police and the prosecutor are at fault only if they failed to notify the Public Defender of the impending lineup, and he is otherwise unaware of when and where it is to be held. If due notice of the lineup has been given to the Public Defender, his failure to respond properly cannot be laid on the law enforcement authorities, and does not call for a sanction imposed to assure that they will respect the suspect's statutory right to the presence of counsel at the lineup. Therefore, a *per se* exclusionary rule is to be invoked only when the police or the prosecutor has failed to inform an otherwise unaware Public Defender of a

prospective lineup. In such circumstances, however, the *per se* exclusion attaches only to the admission of evidence of an extra-judicial identification made at the illegal lineup. The purpose of a strict rule barring evidence is to deter the law enforcement authorities from improper procedures which prejudice a defendant's right to a fair trial. The *per se* rule is not based on the assumption that in every instance the admission of evidence at an illegal confrontation offends due process. *Biggers,* 409 U.S. at 199, 93 S.Ct. at 382.

While the failure of the Public Defender to provide the assistance of counsel after due notice is not the fault of the law enforcement authorities, neither is it the fault of the suspect. Justice would not be served by simply admitting evidence tainted by a lineup which is illegal because of the absence of statutorily required counsel. Nor would it be in accord with the law of this State as it was before the Supreme Court opinions on the matter. *See* Part I(a) of this opinion. We have held with respect to a lineup rendered illegal by the absence of counsel representing the Public Defender, that, when the law enforcement authorities are at fault, identification evidence obtained at the lineup is *per se* barred. We further hold that, regardless of fault, all other identification evidence, both extra-judicial and judicial, which has as its source the illegal lineup, may be admitted if, under the totality of the circumstances, the identification was reliable. This applies the test framed by the Supreme Court for the admission of identification evidence impressed with a taint of the due process variety. To evaluate the reliability of the evidence the same factors are to be considered as those suggested by the Supreme Court in the case of a due process taint. *See* Part I(b)(3) of this opinion.

(d)

*Summary*

■ (1) The constitutional guarantee against self-incrimination does not apply to a lineup.

■■■ (2) The constitutional right to assistance of counsel does not attach to a lineup conducted before a suspect becomes an *accused.*

(i) A suspect becomes an *accused* only at and after the initiation of adversary judicial criminal proceedings by way of indictment, information, other formal charge, arraignment, or preliminary hearing.

■■■■ (3) When an *accused* is exhibited in a lineup, the constitutional right to assistance of counsel attaches, and unless the right is waived, the absence of counsel renders the lineup illegal.

(i) Evidence that the accused was identified at such a lineup is to be excluded *per se.*

(ii) A judicial identification is to be excluded unless the State proves by clear and convincing evidence that the identification has a source independent of the illegal lineup.

(a) In determining whether the judicial identification had an independent source the factors to be considered should include:

(aa) the prior opportunity to observe the alleged criminal act;

(bb) the existence of any discrepancy between any pre-lineup description and the defendant's actual description;

(cc) any identification prior to lineup of another person;

(dd) the identification by picture of the defendant prior to lineup;

(ee) failure to identify the defendant on a prior occasion;

(ff) the lapse of time between the alleged act and the lineup identification;

(gg) those facts which are disclosed concerning the conduct of the lineup.

■■■■ (4) Identification evidence having as its source a lineup which, although not rendered constitution-

ally illegal by the absence of counsel, is nonetheless suggestive, is admissible if it does not offend due process of law.

(i) It does not offend due process of law if, under the totality of the circumstances, it is reliable.

(ii) Its reliability is evaluated according to the degree to which the lineup is suggestive.

(a) If the lineup is so impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification, evidence of both a judicial and an extra-judicial identification stemming therefrom is to be excluded *per se* as unreliable.

(b) If the lineup is so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification (but *not irreparably* so):

(aa) evidence as to an identification made thereat is to be excluded *per se.*

(bb) a judicial identification stemming therefrom is admissible if reliable under the totality of the circumstances.

(c) If the lineup is unnecessarily (impermissibly) suggestive, or suggestive but necessarily (permissibly) so, both a judicial identification and evidence of an identification made thereat are admissible if reliable under the totality of the circumstances.

(5) In evaluating the reliability of an identification under the totality of the circumstances the factors to be considered shall include the following:

(i) the opportunity of the witness to view the criminal at the time of the crime;

(ii) the witness' degree of attention;

(iii) the accuracy of the witness' prior description of the criminal;

(iv) the level of certainty demonstrated by the witness at the confrontation;

(v) the length of time between the crime and the confrontation.

(6) The Public Defender statute requires the assistance of counsel for any person exhibited in a lineup held either before or after the initiation of adversary judicial criminal proceedings. A lineup conducted in violation of this statutory right is illegal.

(i) If the absence of counsel is attributable to law enforcement authorities:

(a) evidence of an identification made at the lineup is to be excluded *per se;*

(b) a judicial identification is admissible if reliable under the totality of the circumstances.

(ii) If the absence of counsel is attributable to the Public Defender:

(a) both a judicial identification and evidence of an identification made at the lineup are admissible if reliable under the totality of the circumstances.

(iii) In evaluating the reliability of the evidence under the totality of the circumstances, the factors to be considered shall include those set out in (5) above.

(7) The admission of evidence to be excluded under (3), (4), and (6) above is prejudicial error unless, in any event, its introduction was harmless error in the contemplation of *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976).

## II

## THE WEBSTER CASE

Sally Ann Bowen was raped on 6 July 1982. Six days later a police detective applied for the issuance of a Statement of Charges, setting out probable cause that Bernard Webster was the rapist. A Maryland District Court commissioner promptly issued a Statement of Charges, which charged Webster with first degree rape. At the same time, the commissioner issued a warrant for Webster's arrest. The warrant was executed on 20 July by the arrest of Webster. On the same day, he was exhibited in a lineup and positively identified as the criminal agent. On 30 July Webster waived a preliminary hearing. On 27 August a

criminal information charging him with first degree rape and related offenses was filed in the Circuit Court for Baltimore County. He was tried before a jury, convicted of rape in the first degree and a related offense and sentenced to a total of 30 years. He noted an appeal. On our own motion we certified the record to us for review prior to decision by the Court of Special Appeals.

Webster filed four motions seeking to suppress any judicial identification of him and all evidence of an extra-judicial identification of him. The reasons set out in the motions boil down to a claim that the lineup was illegal because it was conducted in violation of his Sixth Amendment right to the assistance of counsel and in derogation of his Fourteenth Amendment guarantee of due process of law.[12]

There was a pre-trial hearing on the motions. At the outset, the State suggested that because of unusual circumstances surrounding the lineup regarding the right to counsel, even if the court "makes a preliminary ruling that there was no taint or undue suggestiveness, the State still would ... prefer to proceed to try and establish an independent source [for an in-court identification]."

The unusual circumstances surrounding the lineup regarding the right to counsel were brought out at the hearing on the motions. At the time the police decided to exhibit Webster in a lineup he was not represented by counsel, and, apparently, was indigent.[13] So that Webster would have the assistance of counsel at the lineup, the police informed the Public Defender for Baltimore County of the impending lineup, and Robert B. Aguilar, Jr., an employee of the Public Defender, was dispatched to monitor the proceedings. Aguilar was not then licensed to practice

---

**12.** The fourth motion sought "to suppress any out of court voice identifications of him, because they were made while the witnesses could see him, and thus ... violated his Fourteenth Amendment Right of Due Process." *See* Part I(b)(3) of this opinion.

**13.** Webster was arrested on the charge here while incarcerated in the Baltimore City Jail on unrelated charges.

law, but, as was natural in the circumstances, he was accepted by the police as duly representing Webster.[14] The lineup was conducted under the observation of Aguilar. Webster was positively identified as the rapist.

The trial court denied the motion to suppress. With respect to the right to counsel claim, the court said:

> "The Court will not suppress the testimony as to the lineup on the sheer technical grounds that the clerk was not a licensed lawyer but merely a third year or second year, at that time, law student. To rule otherwise would be to exalt meaningless form over important substance...."

The court's decision was correct, although for a different reason than that expressed. *See Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied, Robeson v. Maryland,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980).

Webster argues before us that the absence of counsel at the lineup infringed his Sixth Amendment right to counsel and thereby rendered the lineup illegal. Therefore, the exclusionary rules enunciated in *Wade* and *Gilbert* were invoked. He urges that evidence as to identifications made at the lineup was *per se* to be excluded and that in-court identifications were inadmissible because their source was the illegal lineup. His argument is not tenable, however, because he was not an "accused" at the time of the lineup.

---

**14.** *Wade* notes: "Although the right to counsel usually means a right to the suspect's own counsel, provision for substitute counsel may be justified...." 388 U.S. at 237, n. 27, 87 S.Ct. at 1938, n. 27. It speaks, however, only in terms of "counsel."

The record before us does not disclose why the Public Defender did not send a member of the bar to represent Webster at the lineup. At the hearing, the State offered to call to the stand the Public Defender for Baltimore County and his assistant to testify "concerning the office procedure that occurred and what events led up to this Mr. Aguilar going down there." The trial judge, however, believed that such evidence was immaterial in the circumstances. He was "sure that in the future the situation will not be repeated."

(a)

## The Sixth Amendment Claim

We have seen with respect to a lineup that the Sixth Amendment right to counsel attaches only at or after the initiation of adversary judicial criminal proceedings by way of indictment, information, other formal charge, arraignment, or preliminary hearing. *See* Part I (b)(2) of this opinion. The lineup was held before the return of the information on which he was tried and, of course, before he was arraigned thereon. There was no preliminary hearing, as it was waived. The Statement of Charges and the arrest warrant were issued prior to the lineup, but neither qualified as a "formal charge." The Statement of Charges charged Webster with first degree rape. That felony is within the exclusive jurisdiction of the circuit court, and, therefore, the Statement of Charges did not constitute a charging document under which a defendant may be tried. Maryland Code (1974, 1980 Repl.Vol., 1983 Cum.Supp.), § 4–302(a) of the Courts and Judicial Proceedings Article. *See State v. Gee*, 298 Md. 565, 471 A.2d 712 (1983). Likewise, a warrant of arrest is not a formal charge because the arrestee cannot be tried thereon. Maryland Rule 710; M.D.R. 710. Of course, Webster was arrested prior to the lineup, but it is perfectly apparent from *Kirby* and its progeny that an arrest does not constitute an adversary judicial criminal proceeding in the Sixth Amendment right to counsel—lineup context. It follows that Webster was not an "accused" at the time he was exhibited in the lineup. Thus, the Sixth Amendment did not command the assistance of counsel for him. Ergo, the lineup was not rendered illegal by the absence of counsel, and the exclusionary rules of *Wade-Gilbert* were not called into play.[15]

---

**15.** The trial judge was not unaware of the *Kirby* holding. He observed:

"[Y]ou do not have any formal information or indictment, and where the case is a charge of rape, it cannot be tried on a statement of charges, so it may well be that this case is beyond the scope of

We hold, as to the Sixth Amendment right to counsel claim that the denial of the motions to suppress was not erroneous, and that, at trial, the judge did not err in receiving in-court identifications and evidence of extra-judicial identifications made at the lineup.

(b)

*The Due Process Claim*

■■■ Webster presents only his Sixth Amendment right to counsel claim on appeal and, therefore, abandons the allegation in his motions to suppress that the manner in which the lineup was conducted infringed due process of law. *See* Md.Rule 846 f. In any event, as the State had suggested, at the hearing on the motions, the judge received evidence on the question whether the lineup was tainted other than by the absence of counsel. The judge considered the comprehensive testimony of Aguilar concerning his close scrutiny of the conduct of the lineup, viewed three photographs of the composition of the lineup showing Webster in various positions admidst four other persons, and heard argument of counsel. He concluded:

"The fact is that this was a very fair lineup, which would not taint anybody's identification. There was no suggestibility involved. Certainly, the case lacks any suggestion of a lack of due process...."

He asserted: "The lineup is without any other taint [than that due to the absence of counsel]."

In anticipation of a possible collateral attack on the judgments entered in this case, we have made an independent constitutional appraisal of the record and proceedings to avoid further expense and to prevent unnecessary encroachment on the time of the judiciary, the Public Defender and the Attorney General. We are in complete accord

---

Wade and Gilbert, which the Court of Appeals has finally concluded require counsel only past the filing of a formal charge."

As we have seen, *supra,* the judge did not rely on this notion in denying the motion. Neither the State nor the defense picked it up and pursued it below or on appeal.

with the findings of the trial judge. The lineup here validates the assumption confidently made by the Supreme Court "that confrontations for identification can be and often have been conducted in the absence of counsel with scrupulous fairness and without prejudice to the accused at trial." *Stovall*, 388 U.S. at 299, 87 S.Ct. at 1971. We hold, as to the due process claim, that the denial of the motions to suppress was not erroneous, and that, at trial, the judge did not err in receiving in-court identifications and evidence of extra-judicial identifications made at the lineup.

(c)

*The Right To Counsel Under The Public Defender Statute*

We have seen that the Public Defender statute commands the assistance of counsel at a lineup. Therefore, the absence of counsel at the lineup at which Webster was exhibited rendered 'the lineup illegal. The identification evidence, however, was properly admitted at the trial. The absence of counsel was certainly not attributable to the law enforcement authorities, who, without solicitation, made every reasonable effort to afford Webster the assistance of counsel.[16] And on our independent constitutional appraisal, made with due regard to the factors to be considered, we find it clear, as we did in assessing the due process claim, that the identification evidence was reliable under the totality of the circumstances. *See* Part I (d)(6)(ii) and (iii) of this opinion. With respect to the assistance of counsel required by the Public Defender statute, the trial judge did not err in the denial of the motions to suppress and in the admission of identification evidence.

---

**16.** We note that the trial judge made sure that the record indicated the absence of any testimony that Webster requested counsel. The judge opined:

"The request for counsel was initiated by the police department in an effort to see that the defendant's rights were safeguarded, and to see that the lineup would not subsequently be subject to an attack under a motion to suppress."

### III

### THE JOHNSON CASE

On 22 July 1982 four men entered the Memco Department Store before it opened for business, and at gun point robbed store employees, stealing money belonging to the store and money and property belonging to certain of the employees. On 30 July a police officer applied for a Statement of Charges on probable cause that Victor Salvadore Johnson, also known as Salvadore Victor Johnson, was one of the robbers. The same day a Maryland District Court commissioner issued a Statement of Charges, whereby Johnson was charged with armed robbery and the use of a handgun in its commission. A warrant for the arrest of Johnson was appended thereto. The warrant was executed on 1 August by the arrest of Johnson. He was exhibited at a lineup conducted by the police on 4 August. An indictment charging him with the armed robberies and related offenses was handed to the Circuit Court for Baltimore County on 23 August, thus aborting a preliminary hearing which had been scheduled for 26 August. When Johnson appeared in court on 1 September without counsel, arraignment was postponed. The appearance of counsel to represent him was entered on 10 September.

Johnson went to trial in the Circuit Court for Baltimore County on 21 October 1982, and a jury convicted him of five offenses of robbery with a deadly weapon and various related crimes. He was sentenced to a total of 25 years. He appealed from the judgments. Before decision by the Court of Special Appeals, we ordered, on our own motion, that the record and proceedings be certified to us for review.

Johnson filed two preliminary motions to suppress evidence. One sought to exclude any "in court identification of him because the out of court identifications of him violated his 6th Amendment right to counsel or his Fourteenth Amendment right of due process." The other mo-

tion asked "the court to suppress the line-up identification made of him out of court because it was overly suggestive and violated his 14th Amendment due process right." The trial judge deemed these motions to challenge the lineup on Sixth Amendment grounds ("right to counsel"), and on Fourteenth Amendment grounds ("suggestibility"). After a plenary pre-trial hearing, he denied the motions.

### (a)

### *The Sixth Amendment Claim*

The factual circumstances with respect to the lineup in which Johnson was exhibited and the lineup in which Webster was exhibited are on all fours. In each instance the police informed the Public Defender of the impending lineup, and each time the Public Defender dispatched Aguilar, not then licensed to practice law, to monitor the proceedings. In each case, the lineup preceded the formal charge (here by indictment),[17] and the arraignment. In each, there was no preliminary hearing. Thus, at the time of the lineup, Johnson, like Webster, was not an accused because adversary judicial criminal proceedings by way of indictment, information, other formal charge, arraignment, or preliminary hearing, had not then been initiated. It follows that the Sixth Amendment did not command that Johnson have the assistance of counsel at the lineup and that the exclusionary rules mandated by *Wade—Gilbert* were not invoked. We so found as to Webster, and we so find as to Johnson.

We hold, as to the Sixth Amendment right to counsel claim, that the denial of the motion seeking to suppress any

---

**17.** As in Webster's case, the statement of charges with respect to Johnson included an offense within the exclusive jurisdiction of the circuit court, and Johnson could not be tried on that document. It, therefore, did not constitute a "formal charge." *See* Part II(a) of this opinion, citing to *State v. Gee,* 298 Md. 565, 471 A.2d 712 (1983).

in-court identification was not erroneous, and that the trial judge did not err in receiving the judicial identifications.[18]

We observe that neither the trial judge, nor the State (at trial and on appeal), nor the defense (at trial and on appeal), nor the police, recognized the application of *Kirby* to the lineup. The Assistant State's Attorney frankly told the court:

"Unquestionably it's a difficult position for the State to be in to argue this Motion.... Quite frankly, Judge, I don't know how to defend it.... I don't know why this lineup should not be suppressed.... [B]ecause of [the Public Defender's] actions, [the defense] can stand up in court and say, throw out the case. Throw out the lineup. Quite frankly Judge, I don't see what alternative you have."

Speaking in the frame of reference of the Sixth Amendment, the judge said:

"Let there be no doubt that this court believes that an attorney was required, that is an attorney. The defendant had a right to an attorney at this lineup to represent his interests."

The judge gave these reasons for denying the motion as to the Sixth Amendment claim:

"[T]he State has committed no wrongful act, no illegal act that I can see. Its conduct was in accordance with what the courts have said it should be. Because I believe the Public Defender's Office understood the representation of the defendant, and it was their misconduct that brought about this dilemma, and because I believe that the purpose or a purpose of the Suppression Rule is to prevent reoccurrence in the future by law enforcement and other governmental agencies, and because I believe that the representation by Mr. Aguilar, although unlawful, was more than adequate and because the State wants to have the right to determine whether there's also an indepen-

---

**18.** As we have indicated, the other motion to suppress went to evidence of extra-judicial identifications. No such evidence was admitted or even offered at the trial, so that motion is moot.

dent source or recollection of those persons at the lineup, and the State may choose to go that route as opposed to relying on the lineup identification, and of course, reserving to the defense an opportunity to get into that, if it chooses."

In any event, no matter what his reasons, the judge was correct in denying the motion as to the Sixth Amendment claim. *Robeson v. State*, 285 Md. at 502, 403 A.2d 1221.

 The State proceeded to adduce evidence at the pretrial hearing to establish that in-court identifications made by those viewing the lineup had an independent source. This was surplusage as far as the Sixth Amendment claim was concerned, because, as we have seen, the exclusionary rules of *Wade—Gilbert* were not invoked, and it was not necessary for the State to prove by clear and convincing evidence that a judicial identification made by one attending the lineup had an independent source.

### (b)

### *The Due Process Claim*

The pre-trial hearing on the motions went also to Johnson's due process claim. At the close of the evidence and after hearing argument of counsel, the judge was not persuaded that the lineup was "impermissibly suggestive or that it was suggestive." He denied the motion to suppress "with respect to ... suggestibility." [19]

---

**19.** Johnson has the notion that the judge below "suggested that the lineup was tainted." We do not read the judge that way. As we see it, after the judge denied the motions to suppress with respect to the right to counsel, he wanted to cover all bases. Even though he had found that the Sixth Amendment right was not violated, he was obviously aware that if he was found to be wrong, and the presence of counsel was constitutionally required at the lineup, an in-court identification was nevertheless admissible if it could be shown that it had a source independent of the tainted confrontation. *Smith and Samuels v. State*, 6 Md.App. 59, 65, 250 A.2d 285, *cert. denied, Smith v. State*, 254 Md. 720, *cert. denied, Samuels v. State*, 255 Md. 743 (1969), *cert. denied, Samuels v. Maryland*, 397 U.S. 1057, 90 S.Ct. 1402, 25 L.Ed.2d 674 (1970). Therefore, he suggested that the lineup be treated "in the

We now make an independent constitutional appraisal to ascertain whether the lineup was so suggestive as to make the admission of judicial identifications stemming therefrom infringe on due process of law. We are aided in this appraisal by the thorough plenary hearing. The record before us paints a clear picture of the procedures followed and recounts fully what actually transpired. The problem of reconstruction, so feared in *Wade*, 388 U.S. at 230–236, 87 S.Ct. at 1933–1937, is simply not present here.

At the outset of our appraisal we note the role played by Aguilar. Although not then licensed to practice law, we glean from the records before us that he was a mature man 34 years of age who had received a bachelor's degree from Widener College, and a master's degree from The Johns Hopkins University. Apparently, he had completed the second year of law school. At the time of the trial of Johnson, Aguilar was employed as "an English teacher in the Baltimore County School System" and had "a part-time job with the Office of the Public Defender...." He had attended two other lineups. His duties at the lineup here were to see that any "suggestibility" was avoided and "to guarantee the integrity of the process." He testified that his

"first duty was to avoid any suggestibility in the lineup and to safeguard those procedures and to answer any questions that the Defendant might have in that regard, and I did speak to him on several occasions during that lineup, both before and afterwards. To speak and confer with the police officers who were conducting the lineup and to make any suggestions to them in order to remove any possible suggestibility in the lineup ... [and] advised the Defendant of the charges he was being faced with and the situation and what was happening...."

nature of a taint," and proceeded to conduct a plenary hearing to give the State an opportunity to show by clear and convincing evidence that any judicial identification that was offered at trial was independent of the lineup.

The record discloses that Aguilar performed his duties well. There were five men in the lineup. He requested that Johnson's position be changed between the various viewings and the police complied with the request. Aguilar testified that there was no suggestion made "as to which person to pick." His only concern about the procedure was that Johnson seemed to be the "stockiest" of those exhibited, and that his skin appeared to be darker. Aguilar also thought that the beards on two of the men appeared to be "fake."

Three photographs of the lineup were admitted in evidence, each with Johnson in a different position. All of the men are black. Although Johnson's skin tone may seem to be darker than that of the others, it is not remarkably so. There is no outstanding difference in the hair styles. Any difference in build does not appear to be great, due in part to the fact that the men's attire, which is identical except for their shoes, is a loose-fitting type of jump suit. It is not disputed that the shoes were not visible to those viewing the lineup. Three of the men sport beards of a similar type. The beards, other than Johnson's, were false, but in our view this is not readily apparent.

A detective who was present at the lineup testified about the procedure which is followed. The witnesses assemble outside the viewing room. Only one witness at a time views the lineup. They are cautioned not to discuss the lineup with any other person. If a witness makes an identification he is taken to an office to complete a form and statement "as to [his] pick." If the witness does not make an identification, he is "escorted out." The detective stated that seven witnesses viewed the lineup. No suggestion was made to any of them with respect to a selection. Of the persons who viewed the lineup, four identified Johnson, two failed to make an identification, and one identified the wrong man.

The record clearly reflects that the Johnson lineup, like the Webster lineup, was "conducted in the absence

of counsel with scrupulous fairness and without prejudice to the accused at trial." *Stovall,* 388 U.S. at 299, 88 S.Ct. at 1971. It appears that Johnson had no quarrel with the viewing procedure followed, but only with the composition of the lineup. A lineup to be fair need not be composed of clones. It would be impossible to assemble five persons who look *exactly* the same, and, of course, this is not required. *See Presley v. State,* 224 Md. 550, 556–557, 168 A.2d 510 (1961), *cert. denied Presley v. Maryland,* 368 U.S. 957, 82 S.Ct. 399, 7 L.Ed.2d 389 (1962). Here, as is readily ascertainable from the photographs of the lineup, the five men exhibited were dressed identically and were reasonably similar in physiognomy and physique. The lineup was not one whit suggestive, either in its composition or in the manner in which it was conducted. It fully comported with that fairness required by the constitutional requirement of due process. Therefore, the lineup presented no bar to the admission at trial of the judicial identifications; no exclusionary rules were invoked.

We hold, as to the Fourteenth Amendment due process claim, that the denial of the motion seeking to suppress any in-court identification was not erroneous, and that the trial judge did not err in receiving the judicial identifications.

■ Ordinarily, our determination that the lineup was in no way suggestive would dispose of Johnson's due process claim. We think, however, that it is desirable to present an alternative basis of decision. Neither the trial court, nor the State, nor the defense recognized the proper test to be applied in resolving the legality of a lineup attacked on due process grounds. Each of them looked to the "independent source" rule of *Wade—Gilbert,* but, as we have pointed out *supra,* that rule is concerned only with a lineup which is illegal on Sixth Amendment right to counsel grounds. It is not the test for the admissibility of identification evidence challenged on Fourteenth Amendment due process grounds. Therefore, for the guidance of the trial court, prosecutors, and defense attorneys, we shall look at the lineup as did the

trial court, assuming, *arguendo*, as it did, that the lineup was suggestive. Since, in any event, the lineup here could not with good reason be deemed to be so impermissibly suggestive as to give rise to a very substantial likelihood of *irreparable* misidentification, we shall consider, for the purpose of decision, that it was tainted to the next highest degree, namely, that it was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. The test of the admissibility of a judicial identification stemming from a lineup so tainted is whether it is reliable under the totality of the circumstances. The evaluation of the identification must include the five factors set out in *Biggers*, 409 U.S. at 199–200, 93 S.Ct. at 382, and reiterated in this opinion *supra*. We make the required analysis in the light of the record here.

Four witnesses, Margaret Lyons, Wendi Heward, Anita Wilson, and Alonso Ray, made an in-court identification of Johnson as one of the robbers. Each of the witnesses had ample opportunity to view Johnson. Lyons saw him at close quarters a few minutes before the robbery. Heward saw him during the robbery at a distance of four feet. Johnson was within five feet of Wilson during the robbery, "face to face." He was in her presence about twelve minutes. Ray saw Johnson when he first came into the store and later during the course of the robbery when they passed and Ray "looked dead in [Johnson's] eyes." None of the witnesses was a casual or passing observer. Other than Lyons, each was actually involved in the robbery, subjected to threats and, in varying degrees, to physical mistreatment. Their degree of attention was, therefore, intense. Although the record does not disclose what previous description of Johnson was given to the police, eight days after the robbery Lyons identified Johnson at an extra-judicial photographic display. There is no suggestion that this viewing did not fully conform to due process standards. The witnesses did not indicate any uncertainty in their respective identifications. The time between the crime and the lineup was only thirteen days.

Although it plays no part in our analysis, all this assurance as to the reliability of the identifications evidence from our analysis of the five factors to be considered is hardly undermined by the fact that an off-duty Anne Arundel County police officer saw Johnson driving the get-away car immediately after the robbery. Surely we cannot say that under all the circumstances of this case there is a very substantial likelihood of misidentification. "Short of that point, such evidence is for the jury to weigh." *Brathwaite,* 432 U.S. at 116, 97 S.Ct. at 2254. As the Court said in that case:

> "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Id.*

We conclude that the criteria laid down by the Supreme Court in determining the admissibility of an in-court identification following a tainted confrontation were satisfactorily met.

We hold, with respect to the due process claim, that, despite the taint of the lineup which we have assumed, the denial of the motion to suppress the in-court identifications was not erroneous and that the trial judge did not err in admitting those identifications.

(c)

*The Right To Counsel Under The Public Defender Statute*

At the time the police decided to exhibit Johnson in a lineup he was not represented by counsel, and, at least to the satisfaction of the police, he did not have the means to employ an attorney. So the police notified the Public Defender of the impending lineup in order that the constitutional imperative for the assistance of counsel, as the police believed it to be, would be satisfied.

The trial judge was correct in his observation that Johnson "had a right to an attorney present at this lineup to

represent his interests," but, as we have seen, the right did not arise from the Sixth Amendment, as the judge thought, but from the Public Defender statute. As with the lineup in which Webster was exhibited, the failure of the Public Defender to provide an *attorney* rendered the conduct of the Johnson lineup illegal. But also, as in the case of Webster, the illegality of the lineup did not call for the *per se* exclusion of the judicial identifications. As our analysis with respect to Johnson's due process claim abundantly makes clear, the test for the admissibility of the identifications was completely satisfied. That is to say, the record reflects that under the totality of the circumstances the identifications were reliable and, thus, were properly admissible.

We hold with respect to the statutory right to counsel that the denial of the motion to suppress was not erroneous and that the judge did not err in admitting the judicial identifications of Johnson.

No question was raised below in either case regarding this statutory right to counsel, which, unlike the Sixth Amendment right, accrues regardless of whether the confrontation occurs before or after the person exhibited in a lineup becomes an "accused." Nor was the point presented in the briefs filed in the Webster appeal or the Johnson appeal. The two appeals, however, were consolidated for argument before us, and during oral argument the point came up at the instance of the Court. *See* Md.Rule 846 f. Even though this question of law was not tried and decided by the circuit court, we have decided it because we think that it is necessary and desirable to do so for the guidance of the lower court, and for the edification of the Public Defender and the various law enforcement authorities. Md. Rule 885.

AS TO NO. 116, SEPTEMBER TERM, 1983, WEBSTER V. STATE, JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.

AS TO NO. 128, SEPTEMBER TERM, 1983, JOHNSON
V. STATE, JUDGMENTS AFFIRMED; COSTS TO BE
PAID BY APPELLANT.

DAVIDSON, Judge, dissenting:

With respect to the constitutional right to the assistance
of counsel embodied in the Sixth Amendment to the United
States Constitution, the majority recognizes the following
principles:

1. The constitutional right to the assistance of counsel
 attaches to a lineup only after indictment.[1]
2. Unless the right to counsel is waived, the absence of
 counsel at a post-indictment lineup renders the lineup
 illegal.
3. The applicable sanction for such illegality is that
 evidence of an identification made at a post-indict-
 ment lineup is to be excluded *per se.*

With respect to the statutory right to the assistance of
counsel embodied in Maryland Code (1957, 1983 Repl.Vol.),
Art. 27A, §§ 1 through 14 (Public Defender Statute), the
majority establishes the following principles:

1. The statutory right to the assistance of counsel at-
 taches to a lineup before as well as after indictment.
2. Unless the right to counsel is waived, the absence of
 counsel at a pre-indictment lineup, as well as a post-in-
 dictment lineup, renders the lineup illegal.
3. The applicable sanctions for such illegality are as
 follows:

 a. If the absence of counsel is attributable to law
 enforcement authorities, evidence of an identification
 made at a pre-indictment or post-indictment lineup is to
 be excluded *per se.*

---

**1.** Throughout this dissenting opinion, the word "indictment" means
indictment, information, other formal charges, arraignment or pre-
liminary hearing.

b. If the absence of counsel is attributable to the public defender, evidence of an identification made at a pre-indictment or post-indictment lineup is admissible if reliable under the totality of circumstances.

I agree with all of the principles enunciated by the majority except that relating to the applicable sanction when the absence of counsel is attributable to the public defender. Under such circumstances, the majority's application of a sanction other than a *per se* exclusionary rule when the statutory right to counsel is violated at a post-indictment lineup is inconsistent with the *per se* exclusionary rule established by the United States Supreme Court for enforcement of the constitutional right to counsel. Equally important, the application of a sanction other than the *per se* exclusionary rule when the statutory right to counsel is violated at a pre-indictment lineup is inconsistent with the intent of the General Assembly and is antithetical to the purpose of the statutory right to counsel.

The legislative history of the Public Defender Statute, enacted in 1971, illuminates the General Assembly's intent with respect to an appropriate sanction for a violation of the statutory right to counsel at a pre-indictment lineup. *See Scott v. State,* 297 Md. 235, 246, 465 A.2d 1126, 1132 (1983); *Department of State Planning v. Mayor of Hagerstown,* 288 Md. 9, 14, 415 A.2d 296, 299 (1980). In 1967, the United States Supreme Court in *United States v. Wade,* 388 U.S. 218, 236–37, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967), held that the constitutional right to counsel attaches to a post-indictment lineup. Moreover, in *Gilbert v. California,* 388 U.S. 263, 273, 87 S.Ct. 1951, 1957, 18 L.Ed.2d 1178 (1967), the Supreme Court held that a *per se* exclusionary rule was to be applied as a sanction when a post-indictment lineup was illegal because of an absence of counsel.

In 1969, the Court of Special Appeals of Maryland decided *Palmer v. State,* 5 Md.App. 691, 249 A.2d 482 (1969). There, Judge Orth, then a member of that Court, initially stated that "the rules of *Wade* and *Gilbert* apply also to a lineup conducted before indictment.... " The Court of Spe-

cial Appeals determined that the constitutional right to counsel attaches to a pre-indictment lineup. Significantly, that Court held that a *per se* exclusionary rule was to be applied as a sanction when a pre-indictment lineup was illegal because of an absence of counsel. *Palmer*, 5 Md. App. at 698–99, 249 A.2d at 488. Thereafter, the Court of Special Appeals consistently enunciated the same principles, including the principle that a *per se* exclusionary rule was the appropriate sanction to be applied whenever evidence was obtained at a pre-indictment lineup conducted in the absence of counsel. *E.g., Billinger v. State,* 9 Md.App. 628, 630, 267 A.2d 275, 276 (1970); *McChan v. State,* 9 Md.App. 317, 319, 264 A.2d 133, 135 (1970); *Cook v. State,* 8 Md.App. 243, 246–47, 259 A.2d 326, 329 (1969); *Joyner v. State,* 7 Md.App. 692, 698–99, 257 A.2d 444, 449 (1969); *Watson v. State,* 7 Md.App. 225, 234–35, 255 A.2d 103, 108 (1969); *Smith v. State,* 6 Md.App. 59, 64–65, 250 A.2d 285, 289, *cert. denied,* 254 Md. 720 (1969), *cert. denied,* 397 U.S. 1057, 90 S.Ct. 1402, 25 L.Ed.2d 674 (1970).

Assumably, the General Assembly was aware of and acted in accordance with these decisions. *Turner v. State,* 299 Md. 565, 578, 474 A.2d 1297, 1304 (1984); *Supervisor of Assessments of Anne Arundel County v. Southgate Harbor,* 279 Md. 586, 591–92, 369 A.2d 1053, 1056 (1977); *Herbert v. Gray,* 38 Md. 529, 532 (1873). In my view, there can be no question that in 1971, when the General Assembly enacted the Public Defender Statute that established the statutory right to counsel at a pre-indictment lineup, it was fully cognizant that the *per se* exclusionary rule would be the sanction applied when evidence was obtained at a pre-indictment lineup conducted in the absence of counsel.

In 1972, the Supreme Court decided *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). There, in a plurality opinion, that Court determined that the constitutional right to counsel attaches only after indictment and that consequently a *per se* exclusionary rule was not applicable to evidence obtained at pre-indictment lineups. There-

after, the Court of Special Appeals in *Jackson v. State*, 17 Md.App. 167, 171–72, 300 A.2d 430, 434, *cert. denied*, 268 Md. 749 (1973), and this Court in *Foster v. State*, 272 Md. 273, 286, 323 A.2d 419, 425 (1973), *cert. denied*, 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974), reached the same conclusion. Assumably, the General Assembly was aware of these decisions. Nevertheless, it did not eliminate the preexisting statutory right to counsel or alter the preexisting sanction of the *per se* exclusionary rule.

The legislative history of the Public Defender Statute establishes that the General Assembly intended that a *per se* exclusionary rule be applied whenever a pre-indictment lineup was illegal because of an absence of counsel. Under these circumstances, the majority's formulation of a sanction based upon fault when a pre-indictment lineup is illegal because of an absence of counsel is contrary to legislative intent and is therefore unjustified.

Moreover, the majority's utilization of a due process totality of circumstances analysis, when a pre-indictment lineup is illegal because of an absence of counsel that is attributable to the public defender, is, in my view, antithetical to the purpose of the statutory right to counsel and is therefore unjustified. In *Wade*, the Supreme Court, in determining that an accused had a constitutional right to counsel at a post-indictment lineup, said at 388 U.S. 228, 87 S.Ct. 1933:

"[T]he confrontation compelled by the State between the accused and the victim or witnesses to a crime to elicit identification evidence is peculiarly riddled with innumerable dangers and variable factors which might seriously, even crucially, derogate from a fair trial."

The Supreme Court recognized the inherently untrustworthy characteristics of identification evidence resulting from "the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification." The Supreme Court further recognized that "[s]uggestion can be created intentionally or unintentionally in many subtle ways." 388 U.S. 228–29, 87

S.Ct. 1933. Indeed, the Supreme Court, at 388 U.S. 235, 87 S.Ct. 1936, said:

"We do not assume that these risks are the result of police procedures intentionally designed to prejudice an accused. Rather we assume they derive from the dangers inherent in eyewitness identification and the suggestibility inherent in the context of the pretrial identification."

The Supreme Court then noted that a post-indictment lineup involves "a process attended with hazards of serious unfairness to the criminal accused" who is generally unable "to ferret out suggestive influences...." 388 U.S. 234, 87 S.Ct. 1936. In conclusion, the Supreme Court, at 388 U.S. 235–37, 87 S.Ct. 1937, said:

"[I]n the present context, where so many variables and pitfalls exist, the first line of defense must be the prevention of unfairness and the lessening of the hazards of eyewitness identification at the lineup itself. The trial which might determine the accused's fate may well not be that in the courtroom but that at the pretrial confrontation, with the State aligned against the accused, the witness the sole jury, and the accused unprotected against the overreaching, intentional or unintentional, and with little or no effective appeal from the judgment there rendered by the witness—'that's the man.'

"Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] * * * as at the trial itself.' Thus both Wade and his counsel should have been notified of the impending lineup, and *counsel's presence should have been a requisite to conduct of the lineup, absent an 'intelligent waiver.'*" (Footnote omitted) (citations omitted) (emphasis added).

Thus, the Supreme Court established that an accused cannot be protected from the potentially prejudicial impact of a pretrial confrontation unless counsel is present to avert prejudice and insure a meaningful confrontation at trial. The Supreme Court did not suggest that these functions could be performed adequately by a person other than a lawyer. Nor did it suggest that an accused's rights could be protected adequately by the presence of a person other than a lawyer.

In *Gilbert,* the Supreme Court considered the appropriate sanction to be applied when a lineup was conducted in the absence of counsel. There, the Supreme Court, at 388 U.S. 273–74, 87 S.Ct. 1957, said:

"Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical lineup. In the absence of legislative regulations adequate to avoid the hazards to a fair trial which inhere in lineups as presently conducted, the desirability of deterring the constitutionally objectionable practice must prevail over the undesirability of excluding relevant evidence. That conclusion is buttressed by the consideration that the witness' testimony of his lineup identification will enhance the impact of his in-court identification on the jury and seriously aggravate whatever derogation exists of the accused's right to a fair trial." (Citations omitted).

In *Gilbert,* the Supreme Court again recognized the potential prejudice inherent in lineups conducted in the absence of counsel. It acknowledged that the accused's right to a fair trial was further aggravated by such lineups because the impact of an incourt identification is enhanced by a lineup identification. It attempted to assure that law enforcement authorities would respect the right to counsel at a lineup and to deter the conduct of lineups in the absence of counsel. All of these considerations support the conclusion that in *Gilbert* the Supreme Court determined

that the potential prejudice of lineups conducted in the absence of counsel was so great that evidence obtained at such lineups was inherently unreliable and should not, under any circumstances, be admitted into evidence for consideration by the trier of fact. This goal was to be achieved by the application of a *per se* exclusionary rule.

Thus, the purpose of the *per se* exclusionary rule applied by the Supreme Court in *Gilbert* was not merely to provide a sanction that would deter law enforcement authorities from improper procedures that impinged upon an accused's constitutional rights. Rather, and more fundamentally, it was to protect the integrity of the fact-finding process itself. In short, the Supreme Court's purpose in applying a *per se* exclusionary rule was to assure an accused a fair trial by requiring that evidence obtained at a lineup conducted in the absence of counsel should not, under any circumstances, be admitted into evidence because it was too inherently unreliable to be considered by the trier of fact.

In my view, the purpose of the statutory right to counsel at a pre-indictment hearing is analogous to the purpose of the constitutional right to counsel at a post-indictment hearing, as explicated by the Supreme Court in *Wade* and *Gilbert*. The Public Defender Statute requires the presence of counsel at a pre-indictment lineup. The purpose of that requirement is to assure an accused a fair trial by requiring that evidence that is inherently unreliable because it is obtained at a lineup conducted in the absence of counsel should not under any circumstances be admitted into evidence to be considered by the trier of fact. Manifestly, that purpose cannot be achieved when the admissibility of evidence obtained at a lineup conducted in the absence of counsel is made dependent upon whether the absence of counsel is attributable to law enforcement authorities or the public defender. Because the potential prejudice inherent in lineups conducted in the absence of counsel is equally great whether that absence is attributable to law enforcement authorities or the public defender, a *per se* exclusionary rule should be employed even when the absence of

counsel is attributable to the public defender.[2] In sum, the majority's utilization of a due process totality of the circumstances analysis transforms otherwise inadmissible evidence into admissible evidence when an absence of counsel is attributable to the public defender. Such a result is antithetical to the purpose of the statutory requirement that counsel be present at a pre-indictment lineup.

Here the record shows that the defendants were identified at pre-indictment lineups. Under the Public Defender Statute, the defendants had a right to counsel. The record shows that the defendants did not waive that right. Nevertheless, counsel was not present at either of the pre-indictment lineups. A person other than a lawyer was present. Manifestly, a person other than a lawyer is not a lawyer.[3] Because a lawyer was not present, the defendants' rights

---

**2.** In my view, the Code of Professional Responsibility constitutes the appropriate sanction or deterrent to prevent an absence of counsel "attributable to the public defender." *See, e.g.,* DR 3–101(A) and DR 6–101(A)(3).

DR 3–101(A) provides:
"A lawyer shall not aid a non-lawyer in the unauthorized practice of law."
DR 6–101(A)(3) provides:
"(A) A lawyer shall not:

"(3) Neglect a legal matter entrusted to him."

**3.** The differences between a lawyer and a non-lawyer who undertakes to handle matters requiring professional legal judgment is cogently described in the Code of Professional Responsibility—Ethical Considerations.

EC 3–1 provides:
"The prohibition against the practice of law by a layman is grounded in the need of the public for integrity and competence of those who undertake to render legal services. Because of the fiduciary and personal character of the lawyer-client relationship and the inherently complex nature of our legal system, the public can better be assured of the requisite responsibility and competence if the practice of law is confined to those who are subject to the requirements and regulations imposed upon members of the legal profession."
EC 3–2 provides:
"The sensitive variations in the considerations that bear on legal determinations often make it difficult even for a lawyer to exercise

were not protected adequately against the potentially preju-
dicial impact of a pretrial confrontation. That the absence
of counsel was attributable to the public defender is imma-
terial. A *per se* exclusionary rule should have been applied.

---

appropriate professional judgment, and it is therefore essential that
the personal nature of the relationship of client and lawyer be
preserved. Competent professional judgment is the product of a
trained familiarity with law and legal processes, a disciplined,
analytical approach to legal problems, and a firm ethical commit-
ment."

EC 3–3 provides:

"A non-lawyer who undertakes to handle legal matters is not gov-
erned as to integrity or legal competence by the same rules that
govern the conduct of a lawyer. A lawyer is not only subject to that
regulation but also is committed to high standards of ethical con-
duct. The public interest is best served in legal matters by a
regulated profession committed to such standards. The Discipli-
nary Rules protect the public in that they prohibit a lawyer from
seeking employment by improper overtures, from acting in cases of
divided loyalties, and from submitting to the control of others in the
exercise of his judgment. Moreover, a person who entrusts legal
matters to a lawyer is protected by the attorney-client privilege and
by the duty of the lawyer to hold inviolate the confidences and
secrets of his client."

EC 3–4 provides:

"A layman who seeks legal services often is not in a position to
judge whether he will receive proper professional attention. The
entrustment of a legal matter may well involve the confidences, the
reputation, the property, the freedom, or even the life of the client.
Proper protection of members of the public demands that no person
be permitted to act in the confidential and demanding capacity of a
lawyer unless he is subject to the regulations of the legal profes-
sion."

EC 3–5 provides:

"It is neither necessary nor desirable to attempt the formulation of a
single, specific definition of what constitutes the practice of law.
Functionally, the practice of law relates to the rendition of services
for others that call for the professional judgment of a lawyer. The
essence of the professional judgment of the lawyer is his educated
ability to relate the general body and philosophy of law to a specific
legal problem of a client; and thus, the public interest will be better
served if only lawyers are permitted to act in matters involving
professional judgment. Where this professional judgment is not
involved, non-lawyers, such as court clerks, police officers, abstract-
ers, and many governmental employees, may engage in occupations
that require a special knowledge of law in certain areas. But the
services of a lawyer are essential in the public interest whenever the
exercise of professional legal judgment is required."

The evidence obtained at the pre-indictment lineups was inadmissible and should have been excluded. I would therefore reverse the judgments of the trial courts and would remand the cases for new trials. Accordingly, I respectfully dissent.